**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TAYLOR-WHARTON<br>INTERNATIONAL LLC, et al., | Case No. 09-14089 (BLS)<br>Jointly Administered |
| Debtors.[1] | **RE: Docket Item Nos. 15 and 46** |

**FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

Upon the motion, dated November 19, 2009, (the "**DIP Motion**"), of Taylor Wharton International LLC, TW Cylinders LLC, TW Cryogenics LLC, Sherwood Valve LLC, American Welding & Tank LLC, and TW Express LLC (each individually a "**Borrower**," and collectively, the "**Borrowers**"), and the other debtors and debtors in possession (collectively, the "**Debtors**"), in the above-referenced cases (the "**Cases**"), seeking entry of an interim order (the "**Interim Order**") and this final order (the "**Final Order**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e), 365, 507 and 552 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and

---

[1] The Debtors in these Cases, along with the last four digits of each Debtor's federal tax identification number are Taylor-Wharton International LLC (1577); TWI-Holding LLC (8154); Taylor-Wharton Intermediate Holdings LLC (6890); Alpha One Inc. (1392); Beta Two Inc. (1408); Gamma Three Inc. (1367); Delta Four Inc. (1320); Epsilon Five Inc. (1344); TW Cryogenics LLC (1713); TW Cylinders LLC (1665); Sherwood Valve LLC (1781); (1890); American Welding & Tank LLC (1945); and TW Express LLC (6414).. The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 4718 Old Gettysburg Road, Mechanicsburg, Pennsylvania 17055.

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), that, among other things:

(i) authorizes the Borrowers to obtain, and authorizes Taylor-Wharton Intermediate Holdings ("**Intermediate Holdings**") and any other guarantors under the DIP Loan Documents (as defined below), in their capacity as guarantors (the "**Guarantors**"), to guarantee, jointly and severally, the Borrowers' obligations in respect of, senior secured postpetition financing, which consists of:

(a) a senior secured, super priority, non-amortizing revolving credit facility of up to $20 million in aggregate principal amount (which includes a letter of credit subfacility in an amount not to exceed $11 million and a swingline loan subfacility, as set forth in the DIP Loan Documents) (the "**Revolving DIP Loans**," and such credit facility, the "**Revolving DIP Facility**") pursuant to the terms of (x) this Final Order, (y) that certain Senior Secured Priming and Superpriority Debtor-In-Possession Revolving Credit Agreement in substantially the form attached to the DIP Motion (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**"),[2] among each of the Borrowers, Intermediate Holdings, each other Person that is designated as a Credit Party thereunder,[3] General Electric Capital Markets Inc. as sole lead arranger and bookrunner (the "**DIP Arranger**"), General Electric Capital Corporation ("**GECC**") as administrative agent and collateral agent (in such capacities, and including any successor administrative agent and collateral agent, the "**DIP Administrative Agent**," and together with the DIP Arranger, and any other documentation agent, administrative agent, collateral agent, co-agent and other agents (and

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement.

[3] Each Debtor that is not a Credit Party shall be referred to herein as a "Non-Credit Party Debtor."

CH\1140609.3

successor agents) in respect of the DIP Facilities (as defined below), collectively, the "**DIP Agents**," such DIP Agents together with the DIP Lenders (as defined below), collectively, the "**DIP Secured Parties**") for itself and certain other financial institutions as revolving lenders (the "**Revolving DIP Lenders**," and together with the DIP Administrative Agent, collectively, the "**Revolving DIP Secured Parties**") and for the Roll Up DIP Lenders (as defined below, and together with the Revolving DIP Lenders, collectively, the "**DIP Lenders**"), and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, together with the DIP Credit Agreement, collectively, the "**DIP Loan Documents**");

(b)    a roll up of all of the Prepetition First Lien Indebtedness (as defined below) (the holders of such rolled up Prepetition First Lien Indebtedness, the "**Roll Up DIP Lenders**," and together with the DIP Administrative Agent, collectively, the "**Roll Up DIP Secured Parties**") (such rolled-up Prepetition First Lien Indebtedness, the "**Roll Up DIP Loans**," and together with the Revolving DIP Loans, collectively, the "**DIP Loans**," and such credit facility, the "**Roll Up DIP Facility**," and together with the Revolving DIP Facility, collectively, the "**DIP Facilities**"), subject to the terms and conditions of this Final Order and the DIP Loan Documents (all DIP Loans (including all Roll Up DIP Loans) made to or for the benefit or account of, and all guaranties issued by, the respective Debtors pursuant to the DIP Loan Documents, this Final Order, and all other obligations and liabilities of the Debtors arising under the DIP Loan Documents, the Interim Order, and this Final Order, including, without limitation, all Obligations as defined in the DIP Credit Agreement, collectively, the "**DIP Obligations**");

(ii)    approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Credit Agreement and the other DIP Loan Documents and to

3

perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)     authorizes each Debtor to grant (x) to the DIP Administrative Agent, for the benefit of itself and the other DIP Secured Parties, Liens on all of the DIP Collateral (as defined below) pursuant to sections 364(c) and (d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) but shall be junior to any valid, enforceable and non-avoidable Liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition First Liens (as defined below), and (y) to the DIP Secured Parties super-priority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired (which, upon entry of the Final Order, will include Avoidance Actions (as defined below)) and proceeds thereof;

(iv)     authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including, without limitation, Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Final Order or otherwise;

(v)     grants, as of the Petition Date and in accordance with the relative priorities set forth herein, certain adequate protection to the Prepetition Second Lien Secured Parties consisting of, among other things, Adequate Protection Replacement Liens (as defined below);

4

(vi)     vacates the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

(vii)    authorizes the Borrower, upon the entry of this Final Order, to borrow under the Revolving DIP Facility in an aggregate outstanding principal amount not to exceed $20,000,000.00, and to incur the Roll Up DIP Loans under the Roll Up DIP Facility;

(viii)   waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Final Order.

Having considered the DIP Motion, the Declaration of Leonard H. York in Support of Chapter 11 Petitions and First Day Pleadings, the DIP Credit Agreement, and the evidence submitted at the Interim Hearing and the final hearing on the DIP Motion held and concluded on January 6, 2010 (the "**Final Hearing**"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the DIP Motion and the Final Hearing having been given; the Final Hearing having been held and concluded on January 6, 2010; and it appearing that approval of the final relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[4], that:**

B.      **Petition Date**. On November 18, 2009, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Bankruptcy Court for the District of Delaware (the "**Court**"). The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No statutory committee of unsecured creditors (to the extent such committee is appointed, the "**Committee**"), trustee, or examiner has been appointed in the Cases.

C.     **Jurisdiction and Venue**. This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Bankruptcy Rules.

D.     **Notice**. Notice of the Final Hearing has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on November 25, 2009, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the United States Securities and Exchange Commission, (iii) the Office of the United States Attorney for the District of Delaware, (iv) the Internal Revenue Service, (v) those entities or individuals included on the Debtors' list of largest unsecured creditors on a consolidated basis, (vi) counsel to the respective Prepetition Agents (as defined below), (vii) the Prepetition Agents, (viii) counsel to the DIP Agents, (ix) the Prepetition PIK Note Holders, and (x) the Pension Benefit Guaranty Corporation. Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Bankruptcy Rules.

E.    **Debtors' Stipulations Regarding the Prepetition First Lien Credit Facility.**
Without prejudice to the rights of parties in interest to the extent set forth in Paragraph 6 below,
the Debtors admit, stipulate, acknowledge and agree (Paragraphs D(i) through D(v) and
Paragraphs E(i) through E(iv) hereof shall be referred to herein collectively as the "**Debtors'**
**Stipulations**") as follows:

(i)    Prepetition First Lien Credit Facility.  As of the Petition Date, Borrowers,
Intermediate Holdings, as a guarantor, the financial institutions parties thereto from time to time
as lenders (the "**Prepetition First Lien Lenders**"), and GECC as administrative agent for the
Prepetition First Lien Lenders (in such capacity, and including any successor agents, the
"**Prepetition First Lien Administrative Agent**") and as collateral agent for the Prepetition First
Lien Lenders (in such capacity, and including any successor agents, the "**Prepetition First Lien**
**Collateral Agent**," and together with the Prepetition First Lien Administrative Agent, and any
other documentation agent, administrative agent, collateral agent, co-agent and other agents for
the Prepetition First Lien Lenders in respect of the Prepetition First Lien Credit Facility (as
defined below), collectively, the "**Prepetition First Lien Agents**," together with the Prepetition
First Lien Lenders, collectively, the "**Prepetition First Lien Secured Parties**"), were parties to
that certain Credit Agreement, dated as of December 7, 2007 (as amended, restated,
supplemented or otherwise modified prior to the Petition Date, the "**Prepetition First Lien**
**Credit Agreement**," and together with the other Loan Documents (as defined in the Prepetition
First Lien Credit Agreement), in each case as amended, restated, supplemented or otherwise
modified prior to the Petition Date, collectively, the "**Prepetition First Lien Loan Documents**,"
and the credit facility contemplated therein, the "**Prepetition First Lien Credit Facility**").  As
of the Petition Date, the aggregate outstanding principal amount of the loans, letters of credit,

7

and other Obligations (as defined in the Prepetition First Lien Credit Agreement) arising under the Prepetition First Lien Loan Documents was no less than approximately $80.95 million, plus all accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and expenses), other charges (in each case, to the extent reimbursable under the Prepetition First Lien Loan Documents) and other obligations owing to the Prepetition First Lien Secured Parties or affiliates thereof, including, without limitation, any amounts under any Secured Rate Contracts (as defined in the Prepetition First Lien Credit Agreement) (all Obligations under, and as defined in the Prepetition First Lien Credit Agreement, together with any other amounts owing by the applicable Debtors under the Prepetition First Lien Loan Documents, collectively, the "**Prepetition First Lien Indebtedness**").

(ii)     <u>Prepetition First Liens and Prepetition First Collateral</u>.  The Prepetition First Lien Indebtedness is secured by Liens granted to, or for the benefit of, the Prepetition First Lien Secured Parties (the "**Prepetition First Liens**") on substantially all of the personal and real property of the Borrowers, Intermediate Holdings and the other Credit Parties (as defined in the Prepetition First Lien Credit Agreement), as further described and defined in the Prepetition First Lien Loan Documents, which for the avoidance of doubt includes Cash Collateral (the "**Prepetition First Lien Collateral**").  As of the Petition Date, (I) the Prepetition First Liens (w) are valid, binding, enforceable, and perfected Liens, (x) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, (y) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the lien subordination contemplated herein), and (z) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), and (C) valid, perfected and unavoidable Liens permitted under the

**8**

applicable Prepetition First Lien Loan Documents, but only to the extent that such Liens are permitted by the applicable Prepetition First Lien Loan Documents to be senior to or pari passu with the applicable Prepetition First Liens, and (II) (x) the Prepetition First Lien Indebtedness constitutes legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition First Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition First Lien Indebtedness exist, and (z) no portion of the Prepetition First Lien Indebtedness or any payments made to any or all of the Prepetition First Lien Secured Parties is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    <u>Prepetition Subordination and Intercreditor Agreement</u>.  Borrowers, the Prepetition First Lien Administrative Agent and the Prepetition Second Lien Agent (as defined below) are parties to that certain Subordination and Intercreditor Agreement, dated as of December 7, 2007 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "**Prepetition Subordination and Intercreditor Agreement**"), which sets forth subordination, intercreditor, and other provisions governing the relative priorities of Prepetition First Lien Credit Facility and the Prepetition Second Lien Notes (as defined below). The Debtors admit, stipulate and agree that the Prepetition Subordination and Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

CH\1140609.3

(iv)    <u>Release of Claims</u>.  Subject to the reservation of rights set forth in Paragraph 6 below, each Debtor and its estate shall be deemed to have waived, discharged, and released the Prepetition First Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, the **"Prepetition First Lien Secured Party Releasees"**) of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition First Lien Secured Party Releasees, whether arising at law or in equity, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition First Lien Indebtedness, or the validity, enforceability, priority, or non-avoidability of the Prepetition First Liens securing the Prepetition First Lien Indebtedness.

F.    **Debtor's Stipulations Regarding the Prepetition Second Lien Notes and Prepetition PIK Note Indebtedness**.

Without prejudice to the rights of parties in interest to the extent set forth in Paragraph 6 below, the Debtors admit, stipulate, acknowledge and agree as follows:

(i)    <u>Prepetition Second Lien Notes</u>.  As of the Petition Date, Borrowers, Intermediate Holdings, as a guarantor, the financial institutions parties thereto from time to time as purchasers (the **"Prepetition Second Lien Holders"**), and U.S. Bank National Association as collateral agent for the Prepetition Second Lien Holders (in such capacity, and including any successor agents, the **"Prepetition Second Lien Agent"** and together with the Prepetition Second Lien Holders and any other documentation agent, administrative agent, collateral agent,

10

co-agent and other agents for the Prepetition Second Lien Holders in respect of the Prepetition Second Lien Notes, collectively, the **"Prepetition Second Lien Secured Parties,"** and together with the Prepetition First Lien Secured Parties, collectively, the **"Prepetition Secured Parties"**; the Prepetition First Lien Agents and Prepetition Second Lien Agent, collectively, the **"Prepetition Agents"**), were parties to that certain Note Purchase Agreement, dated as of December 7, 2007 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Second Lien Note Purchase Agreement,"** and together with the Note Documents (as defined in the Prepetition Second Lien Note Purchase Agreement), in each case as amended, restated, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Second Lien Note Documents,"** and together with the Prepetition First Lien Loan Documents, collectively, the **"Prepetition Loan Documents"**), pursuant to which Borrowers issued to the purchasers thereto those certain 14% Senior Subordinate Secured Notes, dated as of December 7, 2007 (the **"Prepetition Second Lien Notes"**). As of the Petition Date, the aggregate outstanding principal amount of the loans, letters of credit, and other Obligations (as defined in the Prepetition Second Lien Note Purchase Agreement) arising under the Prepetition Second Lien Note Documents was no less than approximately $73.3 million, plus all accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and expenses), other charges (in each case, to the extent reimbursable under the Prepetition Second Lien Note Documents) and other obligations owing to the Prepetition Second Lien Secured Parties or affiliates thereof (all Obligations under, and as defined in the Prepetition Second Lien Note Purchase Agreement, together with any other amounts owing by the applicable Debtors under the Prepetition Second Lien Note Documents, collectively, the **"Prepetition Second Lien Indebtedness"**).

11

(ii)     Prepetition Second Liens and Prepetition Second Lien Collateral. The Prepetition Second Lien Indebtedness is secured by Liens granted to, or for the benefit of, the Prepetition Second Lien Secured Parties (the "**Prepetition Second Liens**," and together with the Prepetition First Liens, the "**Prepetition Liens**") on substantially all personal and real property of certain Debtors, as further described and defined in the Prepetition Second Lien Note Documents, which for the avoidance of doubt includes Cash Collateral (the "**Prepetition Second Lien Collateral**," and together the Prepetition First Lien Collateral, collectively, the "**Prepetition Collateral**"). As of the Petition Date, (I) the Prepetition Second Liens (w) are valid, binding, enforceable, and perfected Liens, (x) were granted to, or for the benefit of, the Prepetition Second Lien Secured Parties for fair consideration and reasonably equivalent value, (y) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the lien subordination contemplated herein), and (z) are subject and subordinate only to (A) the Prepetition First Liens, (B) the DIP Liens (as defined below), (C) the Carve-Out (as defined below), and (D) valid, perfected, and unavoidable Liens permitted under the applicable Prepetition First Lien Loan Documents, but only to the extent that such Liens are permitted by the applicable Prepetition First Lien Loan Documents to be senior to or pari passu with the applicable Prepetition First Liens, and (II) (x) the Prepetition Second Lien Indebtedness constitutes legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Second Lien Note Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition Second Lien Indebtedness exist, and (z) no portion of the Prepetition Second Lien Indebtedness or any payments made to any or all of the Prepetition Second Lien Secured Parties

12

is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)     <u>Release of Claims</u>.    Subject to the reservation of rights set forth in Paragraph 6 below, each Debtor and its estate shall be deemed to have waived, discharged, and released the Prepetition Second Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, the "**Prepetition Second Lien Secured Party Releasees**") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Prepetition Second Lien Secured Party Releasees, whether arising at law or in equity, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Second Lien Indebtedness, or the validity, enforceability, priority, or non-avoidability of the Prepetition Second Liens securing the Prepetition Second Lien Indebtedness.

(iv)     <u>Prepetition PIK Notes</u>.    Intermediate Holdings, as issuer, issued to various holders, including GECC and various Prepetition Second Lien Secured Parties (the "**Prepetition PIK Note Holders**"), those certain 18 3/4% Notes, dated as of December 7, 2007 (the "**Prepetition PIK Notes**"). The Prepetition PIK Note Holders assert that as of the Petition Date, the aggregate outstanding principal amount of the Prepetition PIK Notes was approximately $56.3 million, plus all accrued and unpaid interest, costs, expenses, fees (including reimbursable attorney and other advisor fees and expenses), other charges and other obligations owing to the

13

Prepetition PIK Note Holders or affiliates thereof (all obligations and indebtedness under the Prepetition PIK Notes, collectively, the **"Prepetition PIK Note Indebtedness"**). The Prepetition PIK Note Indebtedness is unsecured.

  G.  <u>**Findings Regarding the DIP Facilities**</u>.

    (i)  <u>Need for Postpetition Financing</u>. The Debtors have an immediate need to obtain the DIP Facilities and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operation needs. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facilities is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

    (ii)  <u>No Credit Available on More Favorable Terms</u>. The Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents. The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors (i) granting to the DIP Secured Parties the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Super-Priority Claims (as defined below) and (ii) allowing the Prepetition First Lien Lenders to provide the Roll Up DIP Loans on the terms set forth herein and in the DIP Loan

CH\1140609.3

Documents (all of the foregoing described in clauses (i) and (ii) above, including the DIP Liens and the DIP Super-Priority Claims, collectively, the **"DIP Protections"**).

H.    **Adequate Protection for Prepetition Secured Parties**. The Prepetition Agents have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses. The Prepetition Agents for their respective Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, for the period through the Cash Collateral Termination Date (as defined below), subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code. All of the Prepetition Second Lien Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any Diminution in Value (as defined below). Based on the Motion and on the record presented to the Court at the Interim and Final Hearings, the terms of the proposed adequate protection arrangements and use of the Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the Prepetition Agents' consent thereto. Each of the Prepetition First Lien Lenders, the Prepetition Second Lien Holders, and the Prepetition PIK Note Holders consented to the entry of this Final Order and relief provided herein.

I.    **Section 552**. In light of the subordination of their Liens and super-priority administrative claims to (i) the Carve-Out in the case of the DIP Secured Parties, and (ii) the Carve-Out and the DIP Liens in the case of the Prepetition Secured Parties, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, the "equities of the case" exception shall not apply.

CH\1140609.3

J.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facilities to the Borrowers in accordance with the DIP Loan Documents and this Final Order.

(ii)    The terms and conditions of the DIP Facilities (including the Roll Up DIP Facility) pursuant to the DIP Loan Documents and this Final Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

(iii)    The DIP Facilities and DIP Loan Documents were negotiated in good faith and at arms' length among the Debtors and the DIP Secured Parties with the assistance and counsel of their respective advisors, and all of the DIP Obligations (including the Roll Up DIP Loans) shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Liens, the DIP Super-Priority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

K.    **Relief Essential; Best Interest**.  The relief requested in the Motion (and provided in the Interim Order and this Final Order) is necessary, essential and appropriate.  Absent granting the relief set forth in this Final Order, the Debtors' estates and their ability to successfully reorganize will be immediately and irreparably harmed. Consummation of the DIP

CH\1140609.3

Facilities and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates consistent with their fiduciary duties.

NOW, THEREFORE, on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition Secured Parties, the DIP Secured Parties and the Prepetition PIK Note Holders to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

IT IS ORDERED that:

1. **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents. Any objections to the DIP Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. **DIP Loan Documents and DIP Protections**.

(a) <u>Approval of DIP Loan Documents</u>. The Debtors are expressly and immediately authorized to establish the DIP Facilities, to execute, deliver and perform under the DIP Loan Documents and to incur the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents (including, without limitation, the conversion the Prepetition First Lien Indebtedness to Roll Up DIP Loans), and to execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required or necessary for the performance by the applicable Debtors under the DIP Facilities and the creation and perfection of the DIP Liens described in, and provided for, by this Final Order and the DIP Loan Documents. The Debtors are hereby authorized, and upon execution of the DIP Credit Agreement, directed to do and perform all acts, pay the principal,

17

interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including, without limitation, all closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Final Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable; provided, however, that the payment of the fees and expenses of the Lender Professionals (as defined below) shall be subject to the provisions of Paragraph 20(a). Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(b)     Authorization to Incur DIP Obligations.   To enable the Debtors to continue to operate their business, subject to the terms and conditions of this Final Order and the DIP Loan Documents, including, without limitation, the budget-related covenants contained in the DIP Credit Agreement (as the same may be modified, supplemented or updated from time to time, the "**Budget Covenants**"), the Borrowers are hereby authorized to (i) borrow under the Revolving DIP Facility in an aggregate outstanding principal amount not to exceed $20,000,000.00, and (ii) incur the Roll Up DIP Loans. All DIP Obligations of the Borrowers shall be unconditionally guaranteed, on a joint and several basis, by the Guarantors, as further provided in the DIP Loan Documents.

(c)     Application of DIP Facilities and DIP Collateral Proceeds.   The proceeds of the DIP Facilities and DIP Collateral (in each case net of any amounts used to pay fees, costs

and expenses pursuant to, and in accordance with, the DIP Loan Documents and this Final Order) shall be used in accordance with the terms and conditions of the DIP Loan Documents and this Final Order, including, without limitation, the Budget Covenants, solely for (i) working capital; (ii) other general corporate purposes of the Debtors (including intercompany loans and investments solely to the extent permitted by the DIP Loan Documents and this Final Order); (iii) payment of any related transaction costs, fees, costs and expenses; (iv) payment of DIP Obligations; and (v) the costs of administration of the Cases. Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of the Plan (as defined below) or any other Chapter 11 plan or plans with respect to any of the Debtors, except with respect to the prepetition obligations as set forth in this Final Order or as otherwise provided in the First Day Orders (as defined in the DIP Credit Agreement), which First Day Orders shall be in form and substance acceptable to the DIP Agents, or as otherwise provided in the DIP Credit Agreement. A copy of the Initial Approved Budget is attached as Exhibit A to the Interim Order.

(d)     Conditions Precedent. The DIP Secured Parties shall have no obligation to make any DIP Loan or other extension of credit or financial accommodation in respect of the DIP Facilities or otherwise unless and until all conditions precedent to the making of any such DIP Loan or other extension of credit or financial accommodation under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the requisite DIP Secured Parties in accordance with the DIP Loan Documents and this Final Order.

(e)     DIP Liens. Effective immediately upon the entry of the Interim Order, and subject to the relative priorities among the DIP Facilities, the Adequate Protection Super-Priority Claims, the Adequate Protection Replacement Liens, the Prepetition First Lien Credit

CH\1140609.3

Facility, and the Prepetition Second Lien Note Documents, in each case as set forth more fully in this Final Order (including in Paragraphs 2(f) and (g)), the DIP Administrative Agent (as provided in the DIP Loan Documents and for itself and the ratable benefit of the other DIP Secured Parties) is hereby granted the following Liens (which, subject to the provisions of Paragraph 6 hereof with respect to the DIP Obligations in respect of the Roll Up DIP Facility, and without any further action by any Person, shall be valid, binding, permanent, perfected, continuing, enforceable and non-avoidable) on all property of the Debtors, then existing or thereafter acquired (but excluding all paid loss deposit funds, letters of credit, and proceeds thereof held by or for the benefit of ACE American Insurance Company and/or its affiliates), including, without limitation, all cash and cash equivalents (whether maintained with any of the DIP Agents or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries (subject to the restriction set forth below), tax refunds, insurance proceeds, commercial tort claims, membership interests and other equity ownership interests in joint ventures (collectively, the "**Joint Venture Entities**") (subject to the restrictions set forth below), all other Collateral (as defined in the DIP Credit Agreement) and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents,

CH\1140609.3

products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing; provided, however, that notwithstanding any provision herein or in any DIP Loan Document to the contrary, no Debtor organized under U.S. law shall be required to pledge in excess of 65% of the voting capital stock of its direct foreign subsidiaries or any of the capital stock of its indirect foreign subsidiaries (all of the foregoing collateral collectively referred to as the "**DIP Collateral**," and all such Liens granted to the DIP Administrative Agent as provided in the DIP Loan Documents and for the ratable benefit of the DIP Secured Parties pursuant to the Interim Order, this Final Order and the DIP Loan Documents, the "**DIP Liens**"):

(I)    pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, non-avoidable, first priority Lien on all unencumbered DIP Collateral and the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law and the proceeds thereof ("**Avoidance Actions**"), whether received by judgment, settlement or otherwise; provided, however, that the DIP Lien on Avoidance Actions and the proceeds thereof shall be limited in amount to the aggregate postpetition diminution in value of the interests of the Roll Up DIP Secured Parties in the Prepetition Collateral (including Cash Collateral), whether or not resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of DIP Liens as security for the Revolving DIP Facility, the subordination of the Liens securing the Roll Up DIP Facility to Liens securing the Revolving DIP Facility and to the Carve-Out, the imposition or enforcement of the automatic stay of Section 362(a) or otherwise;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior Lien upon all DIP Collateral that is subject to (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, other than, in the case of clause (II)(x) or (II)(z), Liens which are expressly stated to be primed by the Liens to be granted to the DIP Administrative Agent described in clause (III) below (subject to such exception, the "**Prepetition Senior Liens**"); and

(III)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming Lien on all DIP Collateral (including, without limitation,

21

Cash Collateral) that is senior and priming to (x) the Liens that secured the obligations of the Borrowers under the Pre Petition First Lien Credit Agreement and other Pre Petition First Lien Loan Documents and (y) any Liens that are junior to the Liens referenced in clause (x), after giving effect to any intercreditor or subordination agreements (the Liens referenced in clauses (x) and (y), collectively, the "**Primed Liens**"); provided, however, that the Liens described in this subsection (III) shall be junior to the Carve-Out and the Prepetition Senior Liens.

(f)     DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Final Order or the other DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Administrative Agent for the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject only to the Prepetition Senior Liens, and to the extent provided in the provisions of this Final Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in clause (i), are senior to all prepetition and postpetition Liens of any other person or entity (including, without limitation, the Primed Liens and the Adequate Protection Replacement Liens).  The DIP Liens and the DIP Super-Priority Claims (i) shall not be subject to sections 506(c), 510, 549, 550, 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate Liens of the Debtors, and (iii) subject to the provisions of Paragraph 6 hereof, shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Cases.

(g)     Relative Lien Priority of DIP Facilities.  Notwithstanding anything to the contrary herein, all Letters of Credit (as defined in the Prepetition First Lien Credit Agreement)

CH\1140609.3

shall be deemed to constitute Letters of Credit, as defined in, and as issued in connection with the DIP Credit Agreement, and accordingly, from and after the Petition Date all Letter of Credit Obligations shall constitute part of the DIP Obligations in respect of the Revolving DIP Credit Facility and be ratably allocable to the Revolving DIP Lenders in accordance with the terms of the DIP Loan Documents, and upon closing of the DIP Facilities, none of the Prepetition First Lien Lenders and Roll Up DIP Lenders shall have any further liability with respect to such Letter of Credit exposure; provided, however, that nothing herein shall alter any such parties' obligations as issuers of any Letters of Credit. Notwithstanding anything to the contrary herein, the relative rights and priorities of the Revolving DIP Secured Parties and the Roll Up DIP Secured Parties in respect of the DIP Collateral shall be as provided in the DIP Credit Agreement.

(h) <u>Enforceable Obligations</u>. The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the applicable Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms. Subject to the provisions of Paragraph 6 hereof with respect to the DIP Obligations in respect of the Roll Up DIP Facility, no obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset,

23

recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(i)     Super-Priority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective as of the date of the Interim Order, subject to Paragraph 16 hereof, all of the DIP Obligations shall constitute allowed super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out to the extent specifically provided in the DIP Loan Documents and this Final Order, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Super-Priority Claims), unsecured claims and all other claims against the applicable Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "**DIP Super-Priority Claims**").  Subject to Paragraph 16 hereof, the DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each other Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, 100% of the capital stock of any first tier foreign subsidiary of any Debtor and all Avoidance Actions.  Other than as provided in the DIP Credit Agreement and this Final Order with respect to the Carve-Out, no costs or expenses of

24

administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Liens and the DIP Super-Priority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder. The DIP Super-Priority Claims granted hereunder to the Roll Up DIP Secured Parties shall be immediately junior in priority and subject to the DIP Super-Priority Claims of the Revolving DIP Secured Parties.

(j)     Events of Default for Breach of Plan Support Agreement and Plan Confirmation Timetable.   Any breach by the Debtors of (i) their covenants and other undertakings in that certain Restructuring Lock-Up Agreement dated as of November 18, 2009 (the "**Lock-Up Agreement**") by and among the Debtors, certain investors and certain Prepetition Secured Parties, or (ii) the timetable and other covenants set forth in Section 4.16 of the DIP Credit Agreement for the filing, confirmation, and consummation of the Plan (as defined in the Lock-Up Agreement) shall constitute an immediate Event of Default under the DIP Credit Agreement.

3.     **Authorization to Use Cash Collateral and Proceeds of the DIP Facilities.**

Subject to the terms and conditions of this Final Order and the DIP Loan Documents, including without limitation, the Budget Covenants, (a) each applicable Debtor is authorized to use proceeds of DIP Loans from and after the Closing Date (as defined in the DIP Credit Agreement), and (b) each applicable Debtor is authorized to use all Cash Collateral, and each Debtor shall be enjoined and prohibited from any time using proceeds of DIP Loans or Cash Collateral except in accordance with the terms and conditions of this Final Order and the DIP Loan Documents. The Prepetition Secured Parties are directed to promptly turn over to the DIP

25

Administrative Agent, until Payment in Full of the Revolving DIP Obligations, all Cash Collateral received or held by them that had not been applied to the Prepetition First Lien Indebtedness or Prepetition Second Lien Indebtedness, as applicable, prior to the Petition Date; provided, however, that the Prepetition Second Lien Secured Parties are granted adequate protection for any aggregate postpetition Diminution in Value of their respective prepetition interests in the applicable Prepetition Collateral as hereinafter set forth. The applicable Debtors' right to use proceeds of DIP Loans, DIP Collateral, Prepetition Collateral and Cash Collateral shall terminate (i) automatically upon the occurrence of the Maturity Date, or (ii) immediately upon notice to such effect by the DIP Administrative Agent to the Debtors after the occurrence and during the continuance of an Event of Default (the applicable termination date specified in clause (i) or (ii) above, the "**Cash Collateral Termination Date**"). Notwithstanding anything to the contrary herein, no Non-Credit Party Debtor is authorized or entitled to use any Cash Collateral or proceeds of DIP Collateral for any purpose without the prior written consent of the DIP Administrative Agent.

4.      **Adequate Protection for Prepetition Second Lien Secured Parties**.  As adequate protection for the respective interests of the Prepetition Second Lien Secured Parties in the respective Prepetition Collateral (including Cash Collateral) for, and in an aggregate amount equal to, the diminution in value (collectively, "**Diminution in Value**") of such interests from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, whether or not resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Liens, the subordination of the Prepetition Second Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) or otherwise, the Prepetition Second Lien Secured Parties shall

CH\1140609.3

receive the following adequate protection (collectively referred to as the "**Prepetition Secured Parties' Adequate Protections**"):

(a)     Adequate Protection Replacement Liens.  Solely to the extent of any aggregate postpetition Diminution in Value of the prepetition interests of the Prepetition Second Lien Secured Parties in the applicable Prepetition Collateral, the Prepetition Second Lien Secured Parties are hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, senior replacement Liens upon all of the DIP Collateral, including any Avoidance Actions (such adequate protection replacement liens, the "**Adequate Protection Replacement Liens**"), which Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Senior Liens, and the payment of the Carve-Out to the extent expressly provided in the DIP Loan Documents and this Final Order, and shall have the relative priorities set forth in Paragraph 4(d).

(b)     Adequate Protection Super-Priority Claims.  Solely to the extent that their respective Adequate Protection Replacement Liens have failed to provide adequate protection, and in such event solely to the extent of any applicable Diminution in Value not adequately protected by such Adequate Protection Replacement Liens, the Prepetition Second Lien Secured Parties are hereby granted, subject to the payment of the DIP Super-Priority Claims and the Carve Out to the extent provided herein and in the DIP Loan Documents, allowed super-priority administrative claims (such adequate protection super-priority claims, the "**Adequate Protection Super-Priority Claims**") pursuant to section 507(b) of the Bankruptcy Code, junior only to the DIP Super-Priority Claims and payable from and having recourse to all to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, 100%

27

of the capital stock of any first tier foreign subsidiary of any Debtor and all Avoidance Actions; provided, however, that (i) the respective Adequate Protection Super-Priority Claims of the Prepetition Second Lien Secured Parties shall have the relative priorities set forth in Paragraph 4(d) hereof, and (ii) the Prepetition Second Lien Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Super-Priority Claims unless and until (x) all DIP Obligations have been paid in full in cash or, in the case of letters of credit or other DIP Obligations which survive termination, cash collateralized, in each case, in accordance with the DIP Loan Documents and this Final Order (or, in the case of the Roll Up DIP Facility, provided the treatment set forth in the Plan, if confirmed and effective, or as otherwise allowed under section 1129(a) of the Bankruptcy Code, this Final Order and the DIP Loan Documents) and (y) all Revolving Credit Commitments under the DIP Loan Documents have been irrevocably terminated (the conditions described in clauses (ii)(x) and (ii)(y), collectively, "**Paid in Full**" or "**Payment in Full**"). Subject to the relative priorities set forth above, the Adequate Protection Super-Priority Claims against each Debtor shall be against each Debtor on a joint and several basis. In addition, if the effective date of the Plan shall have occurred by the date required in respect of the Prepetition Second Lien Indebtedness as set forth in the Lock-Up Agreement, the Adequate Protection Super-Priority Claims shall be deemed satisfied and discharged without any further consideration beyond the distributions to be provided under the Plan to the Prepetition Second Lien Secured Parties. Notwithstanding the foregoing, if the effective date of the Plan shall not have occurred prior to the date set forth in the preceding sentence, then with respect to any plan of reorganization for the Debtors that may be confirmed in these Cases, the Adequate Protection Super-Priority Claims shall be paid in full in cash on the effective date of such plan of reorganization unless the holders of Prepetition Second

28

Lien Indebtedness representing at least two-thirds in amount and more than one-half in number of all claims in respect of such Prepetition Second Lien Indebtedness have agreed to some other manner of satisfaction of such Adequate Protection Super-Priority Claims.

(c) <u>Right to Seek Additional Adequate Protection</u>. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Second Lien Secured Parties. However, subject to the terms of the Lock-Up Agreement, any Prepetition Second Lien Secured Party may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request; provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and Liens of the DIP Secured Parties granted under this Final Order and the DIP Loan Documents and that any such further or different adequate protection granted to the Prepetition Second Lien Secured Parties shall at all times be subordinate and junior to the claims and Liens of the Prepetition First Lien Secured Parties granted under this Final Order and the Prepetition First Lien Loan Documents.

(d) <u>Priorities Among Prepetition Secured Parties</u>. Notwithstanding anything to the contrary herein or in any other order of this Court, the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and rights of the Prepetition Second Lien Secured Parties with respect to the Prepetition Secured Parties' Adequate Protections and the Adequate Protection Liens), shall continue to be governed by the Prepetition Loan Documents and the Prepetition Subordination and Intercreditor Agreement.

(e) <u>Consent to Priming and Adequate Protection</u>. Pursuant to the Lock-Up Agreement, the Prepetition First Lien Administrative Agent, the Prepetition First Lien Lenders

CH\1140609.3

and the Prepetition Second Lien Holders consent to the adequate protection and the priming provided for herein; provided, however, that the consent of the Prepetition Secured Parties to the priming of their Prepetition Liens, the use of Cash Collateral, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Final Order and such consent shall not be deemed to extend to any other replacement financing or debtor in possession financing other than the DIP Facilities provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Final Order is not entered and the DIP Loan Documents and DIP Facilities as set forth herein are not approved; and provided, further, that in the event of the occurrence of the Maturity Date, nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtors.

5.      **Automatic Postpetition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agents and Prepetition Agents (in the latter case, solely with respect to the Adequate Protection Replacement Liens) may, each in their sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the

30

Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors shall execute and deliver to the DIP Agents and/or the Prepetition Agents, as applicable, all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agents and Prepetition Agents, each in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order. To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Loan

31

Document, the DIP Administrative Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured parties in accordance with the DIP Loan Documents and second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition Secured Parties. Each Prepetition Agent shall serve as agent for the DIP Administrative Agent for purposes of perfecting their respective Liens on all DIP Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

6. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. Subject to the reservation of rights set forth in this Paragraph, the Debtors' Stipulations shall be binding upon the Debtors in all circumstances. The Debtors' Stipulations shall be binding upon each other party in interest, including any Committee, unless such Committee or any other party in interest other than the Debtors obtains the authority to commence and commences, or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Cases commences, by the earlier of (x) 60 days following the appointment of the first Committee, (y) if no Committee is appointed, 75 days following the Petition Date, or (z) the initial deadline set by the Court for objections to the confirmation of any plan of reorganization for the Debtors (such time period established by the earlier of clauses (x), (y) and (z) shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred

32

to as the "**Challenge Period Termination Date**"), (i) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (ii) a contested matter or adversary proceeding against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition First Lien Indebtedness (including, without limitation, the roll-up of all of the Prepetition First Lien Indebtedness into the Roll Up DIP Loans) or the Prepetition Second Lien Indebtedness, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition First Lien Indebtedness, the Prepetition Second Lien Indebtedness, or otherwise, including, without limitation, any claim against the Prepetition Secured Parties in the nature of a "lender liability" causes of action, setoff, counterclaim or defense to the Prepetition First Lien Indebtedness or the Prepetition Second Lien Indebtedness (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (the objections, challenges, actions and claims referenced in clauses (i) and (ii), collectively, the "**Claims and Defenses**"); provided that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date. If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, and for all purposes in these Cases and any Successor Case, (i) all payments made to the Prepetition Secured Parties pursuant to the Interim Order or this Final Order or otherwise shall not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Prepetition First Lien Indebtedness shall be deemed to be an allowed secured claim within the meaning of section 506 of the Bankruptcy

CH\1140609.3

Code and the Prepetition Second Lien Indebtedness shall be deemed to be an allowed claim, a portion of which shall be allowed as a secured claim within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, (i) the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee (and, if applicable, any chapter 7 trustee in any Successor Case) and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such adversary proceeding or contested matter, and (ii) any portion of the Debtors' Stipulations or other provisions in clauses (i) through (iv) in the immediately preceding sentence that is the subject of a timely field Claim and Defense shall become binding and preclusive on any Committee (and, if applicable, any chapter 7 trustee in any Successor Case) and or any other party in interest to the extent set forth in any order of the Court resolving such Claim and Defense. The Challenge Period in respect of the Prepetition First Lien Credit Facility may be extended by written agreement of the Prepetition First Lien Agents in their sole discretion. The Challenge Period in respect of the Prepetition Second Lien Notes may be extended by written agreement of the Prepetition Second Lien Agent in its sole discretion. Nothing in this Final Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claim and Defense or other claim against any Prepetition Secured Parties or the DIP Secured Parties.

34

7.	**Carve Out**.  Subject to the terms and conditions contained in this Paragraph 7, each of the DIP Liens, DIP Super-Priority Claims, Prepetition Liens, Adequate Protection Replacement Liens and Adequate Protection Super-Priority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below) solely in the event of the delivery of a Carve-Out Trigger Notice (as defined below) after the occurrence and during the continuance of an Event of Default under, and as defined in, the DIP Loan Documents:

(a)	For purposes of this Final Order, "**Carve-Out**" means (i) all unpaid fees required to be paid in these Cases to the clerk of the Bankruptcy Court and to the office of the United States Trustee under 28 U.S.C. §1930(a), whether arising prior to or after the delivery of the Carve-Out Trigger Notice; (ii) (x) all unpaid fees and expenses incurred by professionals retained by the Debtors or any Committee in these Cases (collectively, the "**Professionals**") and all unpaid expenses incurred by the members of any Committee ("**Committee Members**") (but excluding the fees and expenses of professionals retained by such Committee Members), in each case, that are incurred prior to the delivery by the DIP Administrative Agent of a Carve-Out Trigger Notice (as defined below) and are allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise, and that remain unpaid after application of available funds remaining in the Debtors' estates for such creditors and (y) in an aggregate amount not to exceed $500,000.00 (the "**Carve-Out Cap**"), all unpaid and allowed fees and expenses of Professionals and all unpaid expenses incurred by Committee Members (but excluding the fees and expenses of professionals retained by such Committee Members), in each case, that are incurred after the delivery of a Carve-Out Trigger Notice and that remain unpaid after application of available funds remaining in the Debtors' estates for such creditors (clauses (i), (ii)(x) and (ii)(y), collectively, the "**Carve-Out**").  The term "**Carve-Out Trigger Notice**" shall

35

mean a written notice delivered by the DIP Administrative Agent to the Debtors' lead counsel, the U.S. Trustee, counsel for the Prepetition Second Lien Secured Parties, and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default under the DIP Loan Documents, expressly stating that the Carve-Out (and the Carve-Out Cap) is invoked.

(b)     Following the delivery of the Carve-Out Trigger Notice after the occurrence and during the continuance of any Event of Default under the DIP Loan Documents, any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise, to such Professionals or Committee Members shall (i) not be paid from the proceeds of any DIP Loan, DIP Collateral, Prepetition Collateral or Cash Collateral until such time as all retainers, if any, held by such Professionals or Committee Members have been reduced to zero, and (ii) in the case of any payments made on account of any fees and expenses described in clause (ii)(y) of the definition of Carve-Out, reduce the Carve-Out Cap on a dollar-for-dollar basis.  So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §§ 328, 330 and 331, as the same may be due and payable, and any such compensation and expenses previously paid, or accrued but unpaid, prior to the delivery of the Carve-Out Trigger Notice shall not reduce the Carve-Out or the Carve-Out Cap.

(c)     The DIP Administrative Agent shall be entitled to establish and maintain reserves against borrowing availability under the DIP Facilities on account of the Carve-Out in accordance with the terms of the DIP Credit Agreement.

(d)     Notwithstanding any provision in this Paragraph 7 to the contrary, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, DIP Collateral or proceeds of

the DIP Facilities shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 15 hereof.

(e) Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

8. **Waiver of Section 506(c) Claims**. As a further condition of the DIP Facilities and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein), no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Secured Parties, the Prepetition Secured Parties, the DIP Collateral, the Prepetition First Lien Collateral, the Prepetition Second Lien Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agents, the Prepetition First Lien Agents, or the Prepetition Second Lien Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties and the Prepetition Secured Parties.

9. **After-Acquired Property**. Except as otherwise provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date including, without limitation, in respect of the Prepetition First Lien Credit Facility, except to the

CIN140609.3

extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

10.     **Protection of DIP Secured Parties' Rights**.

(a)     Until such time that all DIP Obligations have been Paid in Full, and except to the extent the Lock-Up Agreement otherwise expressly permits, each Prepetition Secured Party shall (i) not exercise any right or remedy relating to the DIP Collateral, including without limitation, seeking relief from the automatic stay, seeking any sale, realization upon repossession or liquidation of any property, or taking any action to foreclose upon or recover in connection with the Liens granted in respect of the Prepetition First Lien Indebtedness or the Prepetition Second Lien Indebtedness (including, without limitation, the Prepetition Liens and the Adequate Protection Replacement Liens), or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any and all releases of DIP Collateral authorized under the DIP Loan Documents or otherwise consented to by the requisite DIP Secured Parties (provided that the Liens of the Prepetition Secured Parties attach to the proceeds of any disposition of such released DIP Collateral with the same priorities as provided herein), and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of Lien or similar instruments, or otherwise take any action to perfect their Liens on the DIP Collateral unless, solely as to this clause (iii) and solely with respect to the Adequate Protection Replacement Liens, any DIP Agent files financing statements or other documents to perfect the Liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable Liens as of the Petition Date. Notice of the filing of

CH\1140609.3

financing statements or other documents to perfect the Liens granted pursuant to this Final Order shall be provided to the Prepetition Second Lien Secured Parties.

(b)     Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been Paid in Full (or will be Paid in Full upon entry of a final, non-appealable order approving indebtedness described in clause (ii) of this subsection (b)), there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this Final Order to the DIP Secured Parties; or (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Final Order.

(c)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts to the extent and as required by the DIP Loan Documents, (ii) cooperate, consult with, and provide to the DIP Agents all such information as required or allowed under the DIP Loan Documents or the provisions of this Final Order, (iii) permit representatives of the DIP Agents such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public

CH\11406093

accountants as and to the extent required by the DIP Loan Documents, and (iv) permit representatives of the DIP Agents to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

11. **Proceeds of Subsequent Financing.** Without limiting the provisions and protections of Paragraph 10 above, if at any time prior to the Payment in Full of all DIP Obligations (including subsequent to the confirmation of the Plan or any other Chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then in permanent reduction of the other DIP Obligations in accordance with the DIP Loan Documents.

12. **Cash Collection.** Cash collections (including, but not limited to, payments from customers with respect to accounts receivable) constituting proceeds of DIP Collateral shall be directed to lock-box and/or deposit accounts (**"Cash Collection Accounts"**) under the sole dominion and control of the Prepetition First Lien Agent or the DIP Administrative Agent pursuant to a structure reasonably satisfactory to the DIP Agents and in compliance with the Cash Management Order (as defined below). Upon the direction of the DIP Administrative Agent at any time after the occurrence of an Event of Default, all proceeds in the Cash Collection Accounts shall be remitted to the DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then for application to the other DIP Obligations, and the DIP

CIN1140609.3

Administrative Agent shall take all action that is necessary or appropriate to effectuate the foregoing. Unless otherwise agreed to in writing by the DIP Administrative Agent, the Debtors shall maintain no accounts except those identified in any order of the Court approving the Debtors' cash management system (the "**Cash Management Order**"). The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Administrative Agent. The Debtors are authorized to incur obligations and liabilities for treasury, depositary or cash management services, including without limitation, overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a postpetition basis by any financial institution at which any Cash Collection Account is maintained; provided, however, that (i) any Lien securing any such obligations shall be junior to the DIP Lien on the funds in the cash collection accounts at such financial institution, and (ii) except to the extent otherwise required by the Court, nothing herein shall require any DIP Secured Party or Prepetition Secured Party to incur any overdrafts or provide any such services or functions to the Debtors.

13. **Disposition of DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Secured Parties under the DIP Loan Documents (and no such consent shall be implied from any other action, inaction or acquiescence by any DIP Secured Party or any order of this Court), except for sales of inventory in the ordinary course of business or except as otherwise permitted in the DIP Loan Documents and this Final Order and approved by the Court to the extent required under applicable bankruptcy law. Except to the extent

41

otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral shall be remitted to the DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then for application to the other DIP Obligations in accordance with the terms of the DIP Loan Documents.

14.     **Events of Default**.

(a)     <u>Rights and Remedies Upon Event of Default</u>.  Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of, this Court, to the extent necessary to permit the DIP Secured Parties to exercise (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under this Final Order, the DIP Loan Documents other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five business days' prior written notice (the "**Enforcement Notice**") to the Debtors (with a copy to the United States Trustee and the respective lead counsel to any Committee, and the Prepetition Agents), all rights and remedies against the DIP Collateral provided for in any DIP Loan Documents or applicable law (including, without limitation, the right to set off against accounts maintained by the Debtors with any DIP Agent, any other DIP Secured Party, any Prepetition Secured Party or any of their respective affiliates); <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary in clause (ii) above, immediately following the giving of an Enforcement Notice by the DIP Administrative Agent:  (w) the Debtors shall deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then for permanent reduction in the other DIP Obligations, as provided in the

42

DIP Loan Documents; (x) the DIP Administrative Agent shall apply such proceeds in accordance with the provisions of the DIP Loan Documents; (y) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the DIP Obligations and the payment of the Carve-Out, as provided herein and in the applicable DIP Loan Documents; and (z) any obligation otherwise imposed on any or all of the DIP Agents and the other DIP Secured Parties to provide any loan, advance or other financial accommodation to the Debtors pursuant to the DIP Facilities shall immediately be suspended. Following the giving of an Enforcement Notice by the DIP Administrative Agent, the Debtors and any Committee shall be entitled to an emergency hearing before this Court. If the Debtors and any Committee do not contest the right of the DIP Secured Parties to exercise their rights and remedies based upon whether an Event of Default has occurred within such five business-day time period or if the Debtors or any Committee do timely contest the occurrence of an Event of Default and the Court after notice and hearing declines to find that no such Event of Default has occurred, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)     Subject to the provisions of Paragraph 14(a), upon the occurrence of an Event of Default, the DIP Agents and the other DIP Secured Parties are authorized to exercise their rights and remedies and to proceed against any or all of the DIP Collateral under or pursuant to the DIP Loan Documents, this Final Order and applicable law, including without limitation, exercising any of the Debtors' rights with respect to the Debtors' interests in the Joint Venture Entities and the Debtors' interests in leaseholds, including without limitation, selling, leasing or otherwise transferring any of the Debtors' interests in any Joint Venture Entity or leasehold notwithstanding any contractual provision that would otherwise prohibit, restrict, condition or

43

delay any or all of the DIP Agents and the other DIP Secured Parties from taking any such action. All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties shall be turned over to the DIP Administrative Agent until Payment in Full of the Revolving DIP Obligations and then for application to the other DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents; provided, that in the event of the liquidation of the Debtors' estates after an Event of Default and the termination of the Revolving Credit Commitments, the unused amount of the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by any DIP Agent subsequent to the date of termination of the Revolving Credit Commitments and prior to the distribution of any such Cash Collateral to any other parties in interest.

(c)     Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agents or the other DIP Secured Parties contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) business days' written notice to the Debtors and any landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Loan Documents has occurred and is continuing, the DIP Administrative Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor, and the DIP Administrative Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use

44

any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in its businesses, in either the case of subparagraph (i) or (ii) of this Paragraph without interference from lienholders or licensors thereunder, subject to such Lienholders or licensors rights under applicable law, provided, however, that the DIP Administrative Agent, on behalf of the DIP Secured Parties, shall pay only rent and additional rent, fees, royalties or other obligations of the Debtors that first arise after the written notice referenced above from the DIP Administrative Agent and that are payable during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis. Nothing herein shall require the Debtors, the DIP Agents or the other DIP Secured Parties to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agents and the other DIP Secured Parties in this paragraph.

(d)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Loan Documents, the DIP Facilities and this Final Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Final Order.

15.     **Restriction on Use of Proceeds**.   Notwithstanding anything herein to the contrary, no proceeds from the DIP Facilities, DIP Collateral or proceeds thereof, Cash Collateral (including any prepetition retainer funded by any or all of the Prepetition Secured Parties), Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used

CH\1140609.3

by any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, or any other person, party or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties; (b) investigate (except as set forth below), assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any Claims and Defenses, any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity, enforceability, priority and extent of the DIP Obligations and/or the Prepetition First Lien or Second Lien Indebtedness, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Replacement Liens (or the value of any of the Prepetition Collateral or DIP Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Liens, the Adequate Protection Replacement Liens or the other Prepetition Secured Parties' Adequate Protections; (v) except to contest the occurrence or continuation of any Event of Default as permitted in Paragraph 14(a), any action seeking, or having the effect of, preventing, hindering or otherwise delaying any or all of the DIP Secured Parties' and the

CHM140609.3

Prepetition Secured Parties' assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents, the Prepetition Loan Documents or this Final Order; and/or (vi) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Loan Documents; provided, however, up to $25,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facilities may be used by a Committee to investigate the Prepetition First Lien or Second Lien Indebtedness, the Prepetition Liens or any other claims against the Prepetition Secured Parties.

16.     **Limitations in Respect of the Roll Up DIP Loans**. The full amount of the Roll Up DIP Loans will not be required to be repaid in cash on the Maturity Date, but instead shall be treated (i) in the manner set forth in the Plan, or (ii) in any other manner acceptable to the holders of Roll Up DIP Loans representing at least two-thirds in amount and more than one-half in number of all Roll Up DIP Loans (such holders, the "**Requisite Roll Up DIP Lenders**"). Notwithstanding the foregoing, if the Plan has not been confirmed and become effective by the outer date specified in the DIP Credit Agreement (or such later date to which the requisite DIP Secured Parties have agreed in writing), and unless the Requisite Roll Up DIP Lenders otherwise agree in writing, all DIP Obligations in respect of the Roll Up DIP Facility shall become due and payable in full in cash.

17.     **Proofs of Claim**. The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim evidencing the DIP Obligations, the DIP Protections, the Prepetition First Lien Indebtedness, or the Prepetition Second Lien Indebtedness, as applicable, in the Cases or in any Successor Case.

CH\1140609.3

18. **Preservation of Rights Granted under the Final Order**.

(a)    No Non-Consensual Modification or Extension of Final Order.  Unless all DIP Obligations shall have been Paid in Full, the Debtors shall not seek, and it shall constitute an Event of Default (resulting, among other things, in the termination of the Debtors' right to use Cash Collateral), if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Final Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the DIP Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)    Dismissal.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Protections and the Prepetition Secured Parties' Adequate Protections and shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations have been Paid in Full and all Prepetition Secured Parties' Adequate Protections have been paid in full in cash or otherwise satisfied in full (and that all DIP Protections and the Prepetition Secured Parties' Adequate Protections shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' Adequate Protections.

(c)    Modification of Final Order.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facilities contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this

**48**

Court or any other court, the DIP Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity, priority or enforceability of any DIP Protections and the Prepetition Secured Parties' Adequate Protections granted or incurred prior to the actual receipt of written notice by the DIP Agents or the Prepetition Agents, as the case may be, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any Lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations and the Prepetition Secured Parties' Adequate Protections. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or any DIP Obligations or Prepetition Secured Parties' Adequate Protections incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agents or Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all of the DIP Protections and Prepetition Secured Parties' Adequate Protections, as the case may be, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations and Prepetition Secured Parties' Adequate Protections.

(d)     Survival of Final Order.  The provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Prepetition Secured Parties' Adequate Protections, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties shall survive, and shall not be modified, impaired or discharged

49

by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission. The terms and provisions of this Final Order, including all of the DIP Protections, Prepetition Secured Parties' Adequate Protections and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Prepetition Secured Parties' Adequate Protections shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Final Order. Subject to the provisions of this Final Order and the DIP Loan Documents that permit the treatment of the DIP Obligations under the Roll Up DIP Facility pursuant to the Plan or any other Chapter 11 plan with respect to any of the Debtors, the DIP Obligations shall not be discharged by the entry of an order confirming the Plan or any other such Chapter 11 plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

19. **Affiliate Payments; Inter-Debtor Borrowings**. Except as otherwise set forth in the Approved Budget or as otherwise agreed in writing by the DIP Agents and the requisite DIP Secured Parties in their sole discretion, and subject to the remainder of this Paragraph, no Debtor shall make any loans, advances, distributions, transfers or other payments of any kind whatsoever to any other Debtor or any Affiliate. All intercompany claims arising from any permitted postpetition loans, advances, distributions, transfers or other payments from any Debtor to another Debtor shall constitute administrative expense claims against the estate of the

applicable borrowing Debtor, and shall be junior and subordinate to the DIP Obligations and the Prepetition First Lien Indebtedness and shall be subject to the DIP Liens, the DIP Super-Priority Administrative Claims, the Prepetition First Liens and the Adequate Protection Super-Priority Administrative Claims.

20. **Other Rights and Obligations**.

(a)    Expenses.  As provided in the DIP Loan Documents, the applicable Debtors will pay all reasonable expenses incurred by the DIP Agents (including, without limitation, the reasonable fees and disbursements of all counsel for GECC and any internal or third-party appraisers, consultants and auditors advising any DIP Agent) in connection with the preparation, execution, delivery and administration of the DIP Loan Documents, the Interim Order, this Final Order, and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.  Payment of such fees shall not be subject to allowance by this Court.  Professionals for the DIP Agents and the Prepetition First Lien Agents (collectively, the "**Lender Professionals**") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to the Court, U.S. Trustee, any Committee or any other party-in-interest absent further court order.   Copies of invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the U.S. Trustee, counsel for any Committee, and such other parties as the Court may direct.  The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential, or sensitive information).   If the Debtors, U.S. Trustee or counsel for any Committee object to the reasonableness of the fees and expenses of any of the Lender

CH\1140609.3

Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, the Debtors, U.S. Trustee or the Committee, as the case may be, shall file and serve on such Lender Professionals an objection with the Court (the **"Fee Objection"**) limited to the issue of reasonableness of such fees and expenses. The Debtors shall timely pay in accordance with the terms and conditions of this Final Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

(b)     Binding Effect. The provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Prepetition PIK Note Holders, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided, however, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(c)     No Waiver. Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Loan Documents or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under

this Final Order, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Final Order and the Lock-Up Agreement, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and the Lock-Up Agreement, any Chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively. Except to the extent otherwise expressly provided in this Final Order, neither the commencement of the Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition First Lien Credit Facility or the Prepetition Second Lien Note Documents, applicable law, or equity.

(d)    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

(e)    No Marshaling.  Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(f)    Amendments.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facilities, (iii) changes the Maturity Date, or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default. No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Agents (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and, except as provided herein, approved by this Court.

CH\1140609.3

(g)     Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(h)     Enforceability.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(i)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

21.     **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

22.     **Amendments to DIP Credit Agreement.**  Section 7.1(m)(xix) of the DIP Credit Agreement is hereby amended and restated as follows:

> "(xix) any breach of the Restructuring Agreement by any party thereto other than the Agent and Lenders (which breach, in the case of any such party other than the Credit Parties, shall not have been cured on or before the third Business Day after the occurrence thereof) or any failure of the Restructuring Agreement to remain in full force and effect;"

In addition, for avoidance of doubt, the failure of the Debtors to object to, or otherwise actively oppose, the applicable challenge referenced in Section 7.1(m)(vi) or (vii) of the DIP Credit

CH\1140609.3

Agreement by any non-Debtor person or entity shall not, in and of itself, constitute "support by Borrowers" of such challenge within the meaning of either such subsection.

Dated: January 7, 2010
      Wilmington, Delaware

                                       HONORABLE BRENDAN L. SHANNON
                                        UNITED STATES BANKRUPTCY JUDGE

56