# EXHIBIT 2

## COMPARISON OF EXHIBIT 1 AGAINST THE ORIGINAL PLAN

US_ACTIVE-103692067.4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TAYLOR-WHARTON INTERNATIONAL LLC[1], et al., | Case No. 09-14089 (BLS) Jointly Administered |
| Debtors. | |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF TAYLOR-WHARTON INTERNATIONAL LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

REED SMITH LLP
599 Lexington Avenue
22nd Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450

Proposed counsel for the Debtors and Debtors in Possession

REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
Telephone: (302) 778 7512
Facsimile: (302) 778 7575

Proposed counsel for the Debtors and Debtors in Possession

Dated: ~~December 4, 2009~~May 7, 2010

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Taylor-Wharton International LLC (1577); TWI-Holding LLC (8154); Taylor-Wharton Intermediate Holdings LLC (6890); Alpha One Inc. (1392); Beta Two Inc. (1408); Gamma Three Inc. (1367); Delta Four Inc. (1320); Epsilon Five Inc. (1344); TW Cryogenics LLC (1713); TW Cylinders LLC (1665); Sherwood Valve LLC (1781); American Welding & Tank LLC (1945); and TW Express LLC (6414).  Each of the Debtors has a principal place of business at 4817 Old Gettysburg Road, Mechanicsburg, Pennsylvania 17055.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION ....................................................... ~~1~~8

1.1    Scope of Definitions. ~~1~~8

1.2    Definitions. ~~1~~8

1.3    Rules of Interpretation. ~~12~~19

ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............... ~~13~~21

2.1    Introduction ~~13~~21

2.2    Classification Of Claims And Equity Interests ~~13~~21

ARTICLE III. TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS~~14~~22

3.1    DIP Facility Claims ~~14~~22

3.2    Administrative Expense Claims ~~15~~22

3.3    Priority Tax Claims ~~15~~23

3.4    Class 1:  Pre-Petition Secured Revolver Claims ~~16~~23

3.5    Class 2:  Pre-Petition Secured Term Loan Claims ~~16~~24

3.6    Class 3, et seq.:  Other Secured Claims ~~17~~25

3.7    Class 4:  Other Priority Claims ~~18~~25

3.8    Class 5:  Pre-Petition Subordinated Note Claims ~~18~~26

3.9    Class 6:  General Unsecured Claims ~~19~~26

3.10    Class 7:  Holdco PIK Note Claims ~~19~~27

3.11    Class 8:  Intercompany Claims ~~19~~27

3.12    Class 9:  Equity Interests in TWI-Holding ~~20~~27

3.13    Class 10:  Equity Interests in all Debtors other than TWI-Holding. ~~20~~27

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN............................. ~~20~~28

4.1    Presumed Acceptance of Plan ~~20~~28

| 4.2 | **Voting Classes** | 2028 |
| 4.3 | **Acceptance by Impaired Classes of Claims** | 2028 |
| 4.4 | **Deemed Rejection of Plan** | 2028 |
| 4.5 | **Cramdown** | 2128 |
| 4.6 | **Substantive Consolidation of the Debtors for Voting and Distribution Purposes Only** | 2128 |
| 4.7 | **Continued Corporate Existence** | 2129 |
| 4.8 | **Cancellation of Existing Securities and Agreements** | 2129 |
| 4.9 | **Issuance of New Equity Interests** | 2229 |
| 4.10 | **Revesting of Assets** | 2229 |
| 4.11 | **Rights of Action; Reservation of Rights** | 2230 |
| 4.12 | **Effectuating Documents; Further Transactions** | 2330 |
| 4.13 | **Sources of Liquidity** | 2331 |

**ARTICLE V. RELEASES AND INJUNCTIONS RELATED TO RELEASES** ...............2432

| 5.1 | **Exculpation** | 2432 |
| 5.2 | **Releases by Debtors** | 2432 |
| 5.3 | **Releases by Holders of Claims and Equity Interests** | 2533 |
| 5.4 | **Injunction Related to Releases** | 2634 |
| 5.5 | **No Waiver** | 2634 |
| 5.6 | **Deemed Consent** | 2634 |
| 5.7 | **Survival of Indemnification Obligations to Personnel** | 2634 |

**ARTICLE VI. CORPORATE STRUCTURE OF THE REORGANIZED DEBTORS** ...2735

| 6.1 | **Corporate Action** | 2735 |
| 6.2 | **Corporate Structure of Reorganized Debtors** | 2836 |
| 6.3 | **Board of Directors/Managers and Officers of Reorganized Debtors** | 2836 |
| 6.4 | **Indemnification of Directors and Officers** | 2837 |

| | | |
|---|---|---|
| 6.5 | Operating Agreement | ~~29~~37 |
| **ARTICLE VII. DISTRIBUTIONS UNDER THIS PLAN** | | ~~29~~37 |
| 7.1 | Distributions to Holders of Allowed Claims Only | ~~29~~37 |
| 7.2 | Distribution Record Date | ~~29~~37 |
| 7.3 | Disbursing Agent | ~~29~~37 |
| 7.4 | Rights and Powers of the Disbursing Agent | ~~29~~38 |
| 7.5 | Delivery of Distributions | ~~30~~38 |
| 7.6 | Time Bar to Cash Payments | ~~30~~38 |
| 7.7 | Fractional Shares | ~~30~~38 |
| 7.8 | Set-Offs | ~~31~~39 |
| **ARTICLE VIII. PROCEDURES FOR DISPUTED CLAIMS** | | ~~31~~39 |
| 8.1 | Resolution of Disputed Claims; Estimation of Claims | ~~31~~39 |
| 8.2 | No Distributions Pending Allowance | ~~31~~40 |
| 8.3 | Distributions After Allowance | ~~32~~40 |
| **ARTICLE IX. EXECUTORY CONTRACTS** | | ~~32~~40 |
| 9.1 | Assumption of Executory Contracts and Unexpired Leases | ~~32~~40 |
| 9.2 | Cure of Defaults of Assumed Executory Contracts and Unexpired Leases | ~~32~~40 |
| 9.3 | Compensation and Benefit Programs | ~~33~~41 |
| 9.4 | Assumption of Pension Plans | 42 |
| **ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** | | ~~33~~42 |
| 10.1 | Conditions Precedent to Confirmation | ~~33~~42 |
| 10.2 | Conditions Precedent to the Effective Date | ~~33~~43 |
| 10.3 | Waiver of Conditions to Confirmation and Effective Date | ~~35~~44 |
| 10.4 | Effect of Failure of Conditions of the Effective Date | ~~35~~44 |
| **ARTICLE XI. EFFECT OF CONFIRMATION** | | ~~35~~45 |

| | | |
|---|---|---:|
| 11.1 | Discharge of Claims and Termination of Equity Interests | ~~35~~45 |
| 11.2 | Binding Effect. | ~~36~~45 |
| 11.3 | Preservation of Insurance. | ~~36~~45 |
| 11.4 | Section 1146 Exemption. | ~~38~~47 |
| 11.5 | Compliance with Tax Requirements. | ~~38~~47 |
| 11.6 | Severability of Plan Provisions. | ~~38~~48 |
| 11.7 | Exemption from Securities Laws. | ~~39~~48 |
| 11.8 | Allocation of Plan Distributions Between Principal and Interest. | ~~39~~48 |
| **ARTICLE XII. RETENTION OF JURISDICTION** | | ~~39~~48 |
| 12.1 | Post Effective-Date Jurisdiction | ~~39~~48 |
| 12.2 | Jurisdiction Prior to the Effective Date | ~~41~~50 |
| **ARTICLE XIII. MISCELLANEOUS PROVISIONS** | | ~~41~~50 |
| 13.1 | Substantial Consummation | ~~41~~50 |
| 13.2 | Payment of Statutory Fees | ~~41~~50 |
| 13.3 | Retiree Benefits | ~~41~~50 |
| 13.4 | Professional Fee Claims | ~~41~~50 |
| 13.5 | Modifications and Amendments | ~~41~~51 |
| 13.6 | Corrective Action | ~~42~~51 |
| 13.7 | Plan Revocation, Withdrawal or Non-Consummation | ~~42~~51 |
| 13.8 | Modification of Exhibits | ~~42~~52 |
| 13.9 | Governing Law | ~~43~~52 |
| 13.10 | Time | ~~43~~52 |
| 13.11 | Section Headings | ~~43~~52 |
| 13.12 | Effectuating Documents and Further Transactions | ~~43~~52 |
| 13.13 | Successors and Assigns | ~~43~~52 |

**Page**

**13.14  Notices**      43<u>53</u>

## EXHIBITS

**Note:** Exhibits 2-8 and 10-12 to this Plan are voluminous. They were filed with the Court on November 19, 2009 and are available at D.I. 24. They are hereby incorporated by reference.

| | |
|---|---|
| Exhibit 1 | List of Debtors |
| Exhibit 2 | Restructured Credit Agreement |
| Exhibit 3 | Investor PIK Documents |
| Exhibit 4 | Amended Bylaws |
| Exhibit 5 | Amended Certificate |
| Exhibit 6 | Intercreditor Agreement |
| Exhibit 7 | Operating Agreement |
| Exhibit 8 | Note Purchase Agreement |
| Exhibit 9 | Rejected Executory Contracts and Unexpired Leases |
| Exhibit 10 | Restructuring Support Agreement |
| Exhibit 11 | Exit Credit Documents |
| Exhibit 12 | DIP Facility |

# FIRST AMENDED JOINT PLAN OF REORGANIZATION OF TAYLOR-WHARTON INTERNATIONAL LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Taylor-Wharton International LLC ("TWI"), et al., as debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases, hereby propose the following Joint Plan of Reorganization for the resolution of Claims against and Equity Interests in the Debtors pursuant to Section 1121(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. The Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

## ARTICLE I. DEFINITIONS AND INTERPRETATION

**1.1    Scope of Definitions.** Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires defined terms shall include the plural as well as the singular and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral.

**1.2    Definitions.** In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article I of the Plan:

"**ACE Companies**" means ACE American Insurance Company, ESIS, Inc., and their respective affiliates.

"**Administrative Expense Claim**" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, other than a Priority Tax Claim, a DIP Facility Claim or Other Priority Claim.

"**Allowed**" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, any of the following: (a) the amount set forth on the Debtors' books and records, that is not otherwise the subject of a pending objection or dispute; (b) a Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which (i) the Debtors or any other party in interest have not filed an objection and (ii) no contrary Proof of Claim has been filed; (c) a Claim or Equity Interest that either is not a Disputed Claim or Equity Interest or has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation with the Debtors of the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture or other agreement entered into or assumed in connection with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim or Equity Interest that is allowed pursuant to the terms of the Plan; or (g) a Claim that is allowed by order of the Bankruptcy Court.

**"Allowed Interest Rate"** means, with respect to Pre-Petition Secured Loans, all accrued interest thereon at the applicable non-default contract rate (including LIBOR pricing options available in accordance with the Pre-Petition Credit Agreement) under the Pre-Petition Credit Agreement.

**"Amended Bylaws"** means the amended and restated bylaws or operating agreement, as appropriate, of each of the Reorganized Debtors other than TWI-Holding in the form attached hereto as Exhibit 4.

**"Amended Certificate"** means the amended and restated certificate of incorporation or organization or formation of each of the Reorganized Debtors, as appropriate, in the form attached hereto as Exhibit 5.

**"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time, as applicable to the Debtors' Reorganization Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Debtors' Reorganization Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Debtors' Reorganization Cases, and any Local Rules of the Bankruptcy Court, as applicable to the Debtors' Reorganization Cases.

**"Business Day"** means any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or any other day on which banking institutions in New York, NY are required or authorized to close by law or executive order.

**"Cash"** means legal tender of the United States of America and cash equivalents, including but not limited to bank deposits, checks and other similar items.

**"Causes of Action"** means, without limitation, any and all claims, causes of action, demands, rights, actions, suits, damages, injuries, remedies, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, unknown, accrued or to accrue, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or under any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise.

**"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

**"Claims Bar Date"** means ————————————January 29, 2010.

**"Claims Objection Bar Date"** means the bar date for objecting to proofs of claim, which date shall be set by order of the Bankruptcy Court, provided that the Debtors and/or the Reorganized Debtors may seek additional extensions of this date from the Bankruptcy Court.

**"Class"** means a group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122(a)(1) of the Bankruptcy Code.

**"Class 6 Recovery"** means $100,000 in Cash to be set aside by the Debtors for the payment of the aggregate of Allowed Class 6 Claims.

**"Collateral"** means any property or interest in property of the estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**"Confirmation Date"** means that date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Debtors' Reorganization Cases.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Cure Payment"** means payment on an Allowed Claim arising in connection with the Debtors' obligation under Section 365(b)(1)(A) or (B) of the Bankruptcy Code relating to an assumed executory contract.

**"Debtors"** means TWI and its affiliated debtors listed on Exhibit 1 hereto.

**"Debtors' Reorganization Cases"** means the chapter 11 cases commenced by the Debtors in the Bankruptcy Court.

**"DIP Agent"** means GECC, in its capacity as administrative agent under the DIP Facility.

**"DIP Event of Default"** shall have the meaning ascribed to the term "Event of Default" in the DIP Facility.

**"DIP Facility"** means the Senior Secured Priming and Superpriority Debtor-In-Possession Revolving Credit Agreement (as amended, supplemented or otherwise modified from time to time) to be entered into by and among the Debtors, GECC as the issuing bank and administrative agent, and the financial institutions from time to time parties thereto, in the form attached hereto as Exhibit 12.

**"DIP Facility Claim"** means any Claim against any of the Debtors arising under, in connection with, or related to, the DIP Facility or the DIP Order, including all principal, interest, fees, expenses and other amounts payable thereon.

**"DIP Lenders"** means, collectively, the financial institutions from time to time party to the DIP Facility as "Lenders" thereunder, including any predecessors or successors and assigns, in each case, in their respective capacities as such.

**"DIP Letter of Credit"** means any letter of credit issued pursuant to the DIP Facility.

CH\1131177.18

**"DIP Obligations"** means any "Obligations" (as defined in the DIP Facility), including credit extended in respect of overdrafts and related liabilities and other depository, treasury, and cash management services and other clearing services provided by GECC or its affiliates.

**"DIP Order"** means any interim order or final order approving the DIP Facility.

**"DIP Roll-Up Loan"** means that portion of the DIP Facility consisting of a debtor-in-possession term loan into which the Pre-Petition Secured Term Loan Claims and Pre-Petition Secured Revolving Loan Claims (other than Pre-Petition Secured Revolving Loan Claims in respect of the Pre-Petition Letters of Credit) were rolled up in full pursuant to the DIP Order.

**"DIP Roll-Up Loan Claim"** means a Claim arising under the DIP Facility in respect of the DIP Roll-Up Loan.

**"Disbursing Agent"** means any entity (including any Debtor) that acts in the capacity as a Disbursing Agent under the Plan.

**"Disclosure Statement"** means the disclosure statement filed in connection with the Plan, including without limitation, all exhibits and schedules thereto.

**"Disputed Claim or Equity Interest"** means a Claim or Equity Interest, or any portion thereof: (a) listed on the Schedules, as unliquidated, disputed or contingent; (b) that is the subject of an objection or request for estimation filed or is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (c) that is in excess of the amount scheduled as other than disputed, contingent or unliquidated or (d) that is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by Final Order.

**"Distribution Record Date"** means the record date for purposes of making any distribution under the Plan on account of Allowed Claims and Equity Interests, which shall be the Confirmation Date or other such date prior to the Effective Date as may be designated in the Confirmation Order.

**"Effective Date"** means the first Business Day on or after the Confirmation Date on which all the conditions precedent to the effectiveness of the Plan have been satisfied or waived in accordance with the provisions of the Plan.

**"Equity Interest"** means any equity interest in any of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding limited liability company interests, membership interests, units, shares or stock (including common stock or preferred stock), together with any warrants, options or contract rights to purchase or acquire such interest at any time.

**"ERISA"** means Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 and 26 U.S.C. §§ 401-420, as amended.

**"Existing Equity"** means, as applicable, the stock, membership interests or limited liability company interest of the Debtors in existence on the Petition Date.

CH\1131177.18

**"Existing Equity Interests"** means (i) the Existing Equity, (ii) securities convertible into or exchangeable for the Existing Equity and (iii) options, warrants or other rights to acquire the Existing Equity.

**"Existing Senior Loan Agreements"** means the Pre-Petition Credit Agreement, the Pre-Petition Lenders Security Agreement, all other Pre-Petition Security Documents, all other Loan Documents (as defined in the Pre-Petition Credit Agreement), and all other documentation executed in connection with any of the foregoing, as such documents may have been amended, supplemented or otherwise modified.

**"Exit Credit Documents"** means the Restructured Credit Agreement, the Intercreditor Agreement, and Guaranty and Security Agreement, together with the exhibits, schedules and annexes attached thereto, in the forms attached hereto as Exhibit 11 (or in the case of the Intercreditor Agreement in the form attached hereto as Exhibit 6) or otherwise in form and substance satisfactory to (i) the Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders.

**"Final Order"** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in the Debtors' Reorganization Cases or the docket of such other court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

**"GECC"** means General Electric Capital Corporation.

**"General Unsecured Claim"** means any Claim against any of the Debtors that is not an Administrative Expense Claim, an Other Priority Claim, a Priority Tax Claim, a Pre-Petition Secured Revolver Claim, a Pre-Petition Secured Term Loan Claim, a DIP Facility Claim, an Other Secured Claim, a Holdco PIK Note Claim, or a Pre-Petition Subordinated Note Claim.

**"Holdco PIK Note"** means the note issued by Taylor-Wharton Intermediate Holdings LLC, dated as of December 7, 2007, as amended, supplemented, or otherwise modified.

**"Holdco PIK Note Claim"** means any Claim held by a holder of an interest in the Holdco PIK Note and all interest, fees, and other charges thereon or related thereto. The Holdco

PIK Note Claims shall include all Claims in respect of, in connection with or related to obligations related to the Holdco PIK Note.

"**Indemnification Obligations**" shall have the meaning set forth in Section 5.7 of the Plan.

~~"**Insurance Company**" means Ace American Insurance Company.~~

"**Insurance Policy and Related Agreements**" means any liability insurance policy or other insurance policy that was issued to a Debtor or Debtors or under which the Debtor(s) has or claims a right to insurance coverage and related agreements (including, but not limited to, claims servicing agreements).

"**Insurance Security**" means ~~the~~any and all collateral ~~and/or security~~ held by ~~the Insurance Company securing, in whole or in part,~~or under the control of the ACE Companies to secure the obligations of the Debtors to the ~~Insurance Company, consisting of a $7,034,188 letter of credit provided by Wachovia Bank, N.A., for the benefit of the Insurance Company.~~ACE Companies under the Insurance Policies and Related Agreements including, but not limited to, letters of credit in the aggregate amount of $8,183,425 and paid loss deposit funds in the aggregate amount of $70,000 as of by December 23, 2009, and the proceeds of the foregoing.

"**Insurer**" means any insurance company (including, but not limited to, the ACE Companies) or insurance carrier that issued an Insurance Policy.

"**Intercompany Claim**" means any Claim held by a Debtor against another Debtor, including without limitation: (a) any account reflecting intercompany book entries by a Debtor with respect to another Debtor, (b) any Claim not reflected in such book entries that is held by a Debtor against another Debtor, and (c) any derivative Claim asserted by or on behalf of one Debtor against another Debtor. For the avoidance of doubt, the term Intercompany Claim does not include any Claim held by any foreign Subsidiaries against the Debtors or any Claim held by the Debtors against any foreign Subsidiaries.

"**Intercreditor Agreement**" means the Subordination and Intercreditor Agreement in the form attached hereto as Exhibit 6.

"**Investor PIK Documents**" means the Investor PIK Notes, the Note Purchase Agreement, and any and all other documents in connection therewith.

"**Investor PIK Notes**" shall have the definition set forth in Section 4.13.2.

"**Investor PIK Note Purchasers**" shall mean Wind Point Partners VI, L.P., Wind Point VI Executive Advisor Partners, L.P., Audax Mezzanine Fund II, L.P., Audax Trust Co-Invest, L.P., Audax Co-Invest, L.P., AFF Co-Invest, L.P., Partners Group Access 55, L.P., Carlyle Mezzanine Partners, L.P., and all other Purchasers under the Note Purchase Agreement.

"**Lien**" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

"**New Equity**" means, as applicable, the new stock, new membership interests or new limited liability company interests of each of the Reorganized Debtors.

"**New TWI-Holding Equity**" means the limited liability company interests of Reorganized TWI-Holding.

**"Note Purchase Agreement"** means the Note Purchase Agreement, together with all exhibits, schedules and annexes thereto, in the form attached hereto as Exhibit 8.

**"Objection Deadline"** means the date and time to be set forth in an order of the Bankruptcy Court by which a creditor or interest holder or other party in interest must file an objection to confirmation of the Plan.

**"Operating Agreement"** means the operating agreement, to be dated as of the Effective Date, among Reorganized TWI-Holding and each of the persons receiving any portion of the New TWI-Holding Equity on or after the Effective Date, substantially in the form attached hereto as Exhibit 7.

**"Other Existing Equity Interests"** means any options, warrants or rights, contractual or otherwise, to acquire any Equity Interest in TWI.

**"Other Priority Claim"** means any Claim (other than an Administrative Expense Claim, Priority Tax Claim, or DIP Facility Claim) entitled to priority of payment under Section 507(a) of the Bankruptcy Code.

**"Other Secured Claim"** means a Secured Claim other than a DIP Facility Claim, a Pre-Petition Secured Revolver Claim, a Pre-Petition Secured Term Loan Claim, or a Pre-Petition Subordinated Note Claim.

**"PBGC"** means the Pension Benefit Guaranty Corporation.

**"Pension Plans"** means the Debtors' defined benefits plans, including the TW Harrisburg Hourly Employees Pension Plan and the TWI Hourly Employees Pension Plan, together with the Debtors' multi-employer plan.

**"Person"** means an individual, partnership, corporation, business trust, estate, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, joint venture or other entity or any government, governmental agency or any subdivision, department or other instrumentality thereof.

**"Petition Date"** means the date on which the Debtors filed voluntary petitions with the Bankruptcy Court commencing the Debtors' Reorganization Cases.

**"Plan"** means the joint chapter 11 plan of the Debtors, including all exhibits, supplements, appendices and schedules thereto, either in its or their present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan.

**"Plan Documents"** means the agreements, instruments and documents to be executed, delivered and/or performed in conjunction with the consummation of the Plan, including without limitation, (a) the Plan, (b) the Plan Supplement, (c) the Amended Certificates, (d) the Amended Bylaws, (e) the Restructured Credit Documents, (f) the Operating Agreement and (g) the Investor PIK Documents.

CI\1131177.18

**"Plan Supplement"** means the compilation of documents that the Debtors shall file with the Bankruptcy Court in support of the Plan on or before the date that is five days prior to the Confirmation Hearing.

**"Potentially Insured Claim"** means a Claim against a Debtor or Debtors that was or could have been asserted in, and is therefore subject to discharge in, the Debtors' Reorganization Cases and that is alleged to be covered, in whole or in part, by an Insurance Policy. "Potentially Insured Claims" are within the class of General Unsecured Claims. Claims for workers' compensation benefits are not included in the term "Potentially Insured Claims."

**"Pre-Petition Agent"** means GECC, in its capacity as administrative agent under the Pre-Petition Credit Agreement.

**"Pre-Petition Credit Agreement"** means that certain Amended and Restated Credit Agreement, dated as of December 7, 2007, by and among TWI and the other Borrowers thereto, the Pre-Petition Revolver Lenders, the Pre-Petition Term Lenders, and the Pre-Petition Agent, as amended, supplemented or otherwise modified.

**"Pre-Petition Credit Agreement Secured Parties"** means the Pre-Petition Secured Lenders and the other "Secured Parties" (as defined in the Pre-Petition Credit Agreement) and their respective successors and assigns, in each case, in their respective capacities as such.

**"Pre-Petition Letter of Credit"** means any letter of credit issued pursuant to the Pre-Petition Credit Agreement.

**"Pre-Petition Obligations"** means the "Obligations" as defined in the Pre-Petition Credit Agreement.

**"Pre-Petition Revolver Lenders"** means the Lenders making one or more Pre-Petition Revolving Loans, including any Swingline Lenders and any L/C Issuers (each as defined in the Pre-Petition Credit Agreement), and their respective successors and assigns, in each case in their respective capacities as such.

**"Pre-Petition Revolving Loans"** means the "Revolving Loans" as defined in the Pre-Petition Credit Agreement, including the Swing Loans (as defined in the Pre-Petition Credit Agreement) made pursuant to the Pre-Petition Credit Agreement, the Pre-Petition Letters of Credit issued, under the Pre-Petition Credit Agreement, and all other Pre-Petition Obligations other than the Pre-Petition Term Loans and accrued interest in respect thereof.

**"Pre-Petition Lenders Security Agreement"** means the Guaranty and Security Agreement, dated as of December 7, 2007, among TWI, certain affiliates of TWI, and the Pre-Petition Agent for the benefit of the Pre-Petition Secured Lenders, as amended, supplemented or otherwise modified.

**"Pre-Petition Secured Lenders"** means, collectively, the Pre-Petition Revolver Lenders, the Pre-Petition Term Lenders, and the Secured Swap Providers under the Pre-Petition Credit Agreement, and the respective successors and assigns of each of the foregoing, in each case in their respective capacities as such.

**"Pre-Petition Secured Loans"** means, collectively, the Pre-Petition Revolving Loans and the Pre-Petition Term Loans.

**"Pre-Petition Secured Revolver Claims"** means the Claims of the Pre-Petition Revolver Lenders and the Pre-Petition Agent in respect of Revolving Loans made or incurred pursuant to the Pre-Petition Credit Agreement, and all interest, fees and other charges thereon or related thereto. The Pre-Petition Secured Revolver Claims shall include all Claims in respect of, in connection with or related to Pre-Petition Obligations other than the Pre-Petition Obligations in respect of the Pre-Petition Term Loans.

**"Pre-Petition Secured Term Loan Claims"** means the Claims of the Pre-Petition Term Lenders and the Pre-Petition Agent in respect of Term Loans made pursuant to the Pre-Petition Credit Agreement, and all interest, fees and other charges thereon or related thereto. The Pre-Petition Secured Term Loan Claims shall include all Claims in respect of, in connection with or related to Pre-Petition Obligations related to Pre-Petition Term Loans.

**"Pre-Petition Security Documents"** means the Pre-Petition Lenders Security Agreement and all related documents granting security for any or all of the Pre-Petition Obligations, and all ancillary documents, in each case, as the same may be amended, supplemented, or otherwise modified.

**"Pre-Petition Subordinated Notes"** means the notes issued pursuant to the Note Purchase Agreement, dated December 7, 2007, by and among TWI and certain of its affiliates, as Borrowers, and other parties thereto as Credit Parties and Purchasers, as amended, supplemented, or otherwise modified.

**"Pre-Petition Subordinated Note Claim"** means any Claim held by a holder of an interest in the Pre-Petition Subordinated Notes and all interest, fees and other charges thereon or related thereto. The Pre-Petition Subordinated Note Claims shall include all Claims in respect of, in connection with or related to obligations related to the Pre-Petition Subordinated Notes.

**"Pre-Petition Subordinated Noteholders"** means the "Purchasers," as defined in the Pre-Petition Subordinated Notes, and their respective successors and assigns, in each case in their respective capacities as such.

**"Pre-Petition Term Lenders"** means the Lenders making one or more Pre-Petition Term Loans, and their successors and assigns, in each case, in their respective capacities as such.

**"Pre-Petition Term Loans"** means the "Term Loans" as defined in the Pre-Petition Credit Agreement.

**"Priority Tax Claim"** means any Claim of a governmental unit of the kind entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, including a Secured Tax Claim.

**"Professional Fee Claims"** means any Claim of a professional person retained or otherwise entitled to be paid pursuant to Sections 327, 503(b) or 1103 of the Bankruptcy Code,

CH\131177.18

for compensation, indemnification or reimbursement of costs and expenses relating to services performed on and after the Petition Date through and including the Effective Date.

"**Proof of Claim**" means any proof of claim that is filed by a holder of a Claim.

"**Pro Rata**" means (a) with respect to an Allowed Claim in any Class, the ratio of (i) the amount of such Allowed Claim to (ii) the aggregate amount of all Allowed Claims in such Class and (b) with respect to an Allowed Equity Interest in any Class, the ratio of (i) the shares or units of such Equity Interest to (ii) the aggregate number of shares or units of all Equity Interests in such Class.

"**Reinstate**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; and (iii) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim.

"**Related Persons**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, managers, employees, representatives, advisors (whether engaged prior to or subsequent to the Petition Date), attorneys (whether engaged prior to, on or subsequent to the Petition Date), agents and professionals, acting in such capacity, and any Person claiming by or through any of them; provided, however, that no insurers of the Debtors, including without limitation, any Insurance Carrier, shall constitute a Related Person.

"**Released Actions**" means all claims, cross-claims, counterclaims, third-party claims, obligations, suits, judgments, damages, debts, rights, causes of action and liabilities, and all Equity Interests and rights of any equity security holder, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, facts, transaction, event or other circumstance that occurred, arose, took place, existed or exists on or prior to the Effective Date in connection with or related to the Debtors and their respective estates, or their business operations (including without limitation, the organization or capitalization of the Debtors or extensions of credit and other financial services and accommodations made or not made to the Debtors), the Reorganized Debtors and their respective estates (including without limitation, any and all alter ego or derivative claims accruing to the Debtors and their estates), or the Debtors' Reorganization Cases; provided, however, that the term "Released Actions" shall not include any claims of the Pre-Petition Secured Lenders under any of the Existing Senior Loan Agreements, if applicable, as amended or amended and restated by the Restructured Credit Documents or any claims of any person or entity under the Plan or the Plan Documents.

CH\131177.18

**"Released Parties"** means (i) the Debtors, (ii) the Pre-Petition Agent, the Pre-Petition Credit Agreement Secured Parties, the DIP Agent, the DIP Lenders, the Pre-Petition Subordinated Noteholders, and the Investor PIK Note Purchasers, in each case, solely in their respective capacities as such, and (iii) the respective Related Persons of each of the foregoing persons and entities referenced in clauses (i) and (ii) above.

**"Reorganized TWI"** means TWI from and after the Effective Date or a newly created corporation to which all of the assets or the equity of TWI shall be transferred on the Effective Date.

**"Reorganized TWI-Holding"** means TWI-Holding from and after the Effective Date or a newly created corporation to which all of the assets or the equity of TWI-Holding shall be transferred on the Effective Date.

**"Reorganized Debtors"** means the Debtors from and after the Effective Date, or the newly created corporations to which all the assets or equity of the Debtors shall be transferred on the Effective Date.

**"Reorganized Affiliates"** means the Reorganized Debtors, other than Reorganized TWI-Holding.

**"Requisite Supporting Noteholders"** means one or more Pre-Petition Subordinated Noteholders holding at least two-thirds in amount and more than one-half in number of all Pre-Petition Subordinated Note Claims.

**"Requisite Supporting Revolving Lenders"** means one or more Pre-Petition Revolver Lenders holding at least two-thirds in amount and more than one-half in number of all Pre-Petition Secured Revolver Claims.

**"Requisite Supporting Term Lenders"** means one or more Pre-Petition Term Lenders holding at least two-thirds in amount and more than one-half in number of all Pre-Petition Secured Term Loan Claims.

**"Restructured Credit Agreement"** means an Amended and Restated Credit Agreement, in the form attached as Exhibit 2 hereto or otherwise in form and substance satisfactory to the Debtors, the Pre-Petition Agent, the Requisite Supporting Revolving Lenders, the Requisite Supporting Term Lenders and, to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders. The Restructured Credit Agreement shall become effective on the Effective Date and be binding upon the Debtors, the Pre-Petition Agent and all Pre-Petition Secured Lenders.

**"Restructured Credit Documents"** means the Restructured Credit Agreement and the Intercreditor Agreement and any and all other "Loan Documents" as defined in the Restructured Credit Agreement. For avoidance of doubt, the term "Restructured Credit Documents" shall include the Pre-Petition Credit Agreement, as amended and restated by the Restructured Credit Agreement, and the Pre-Petition Security Documents, if applicable, as amended or amended and restated by Loan Documents executed in connection with the Restructured Credit Agreement.

CH\131177.18

**"Restructuring Support Agreement"** means the Restructuring Lock-Up Agreement dated as of November 18, 2009, a copy of which is attached hereto as Exhibit 10.

**"Schedules"** means the schedules of assets and liabilities, the list of holders of Equity Interests and the statement of financial affairs, as amended, to be filed by the Debtors, on the first day of the Debtors' Reorganization Cases or as soon thereafter as practicable under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**"Secured Claim"** means any Claim secured by a Lien on Collateral, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

**"Secured Tax Claim"** means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

**"TWI"** means Taylor-Wharton International LLC, a Delaware limited liability company.

**"TWI-Holding"** means TWI-Holding LLC.

## 1.3    Rules of Interpretation.

1.      In the event of an inconsistency, the provisions of the Plan shall control over the contents of the Disclosure Statement.  In the event of any conflict between the terms and provisions of this Plan and the terms and provisions in the Restructured Credit Documents, the Operating Agreement or the Investor PIK Documents, the terms and provisions of the Restructured Credit Documents, the Operating Agreement or the Investor PIK Documents, as applicable, shall control and govern.  The provisions of the Confirmation Order shall control over the contents of the Plan and all Plan Documents.

2.      For the purposes of the Plan:

        (a)     any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms or conditions that is material to a party to such document shall require the consent of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders;

        (b)     any reference in the Plan to an existing document, exhibit or schedule filed or to be filed means such document, exhibit or schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c)     unless otherwise specified, all references in the Plan to "Sections," "Articles," "Exhibits" and "Schedules" are references to Sections, Articles, Exhibits and Schedules of or to the Plan, as the same they be amended, waived, supplemented or modified from time to time;

(d)     the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(e)     captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part or to affect interpretations of the Plan;

(f)     the rules of construction set forth in Bankruptcy Code Section 102 shall apply, except to the extent inconsistent with the provisions of this Article of the Plan; and

(g)     the word "including" means "including without limitation."

3.     Except with respect to claims required to be paid pursuant to Section 3.1, 10.2(c) or 10.2(g) of this Plan (which shall be paid when due), whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as promptly as practicable thereafter.

4.     All Exhibits to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are filed.

5.     Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

6.     This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Debtors, the Pre-Petition Agent for the Pre-Petition Secured Lenders, holders of the Pre-Petition Subordinated Notes, and certain other creditors and constituencies. Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, any of the Plan Documents, or any contract, instrument, release, indenture, or other agreement or document generated in connection herewith.

## ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1    Introduction**

The classification and treatment of Claims and Equity Interests for purposes of this Plan is set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims, Administrative Expense Claims and Priority Tax Claims have not been classified. Other

Claims and Equity Interests shall be included in a particular Class only to the extent such Claims or Equity Interests qualify for inclusion in such Class.

## 2.2    Classification Of Claims And Equity Interests

**Unimpaired and Unclassified Claims.**

(a)    DIP Facility Claims

(b)    Administrative Expense Claims

(c)    Priority Tax Claims

**Description of the Classes.**

(d)    Class 1: Pre-Petition Secured Revolver Claims (Impaired)

(e)    Class 2: Pre-Petition Secured Term Loan Claims (Impaired)

(f)    Class 3: Other Secured Claims (Unimpaired)

(g)    Class 4: Other Priority Claims (Unimpaired)

(h)    Class 5: Pre-Petition Subordinated Note Claims (Impaired)

(i)    Class 6: General Unsecured Claims (Impaired)

(j)    Class 7: Holdco PIK Note Claims (Impaired)

(k)    Class 8: Intercompany Claims (Unimpaired)

(l)    Class 9: Equity Interests in TWI-Holding (Impaired)

(m)    Class 10: Equity Interests in the Debtors other than TWI-Holding (Unimpaired)

## ARTICLE III.
## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Other than as specifically set forth herein, the treatment of and consideration to be received by holders of Claims or Equity Interests pursuant to this Article III shall be in full satisfaction, settlement, release and discharge of such holder's respective Claim or Equity Interest. Except as expressly set forth herein or in the Confirmation Order, such discharge shall not affect the liability of any other person or entity on, or the property of any other person or entity encumbered to secure payment of, any such Claim or Equity Interest; nor shall it affect the Reorganized Debtors' obligations pursuant to this Plan.

### 3.1 DIP Facility Claims

DIP Facility Claims are unimpaired and unclassified claims.

The DIP Facility Claims shall be Allowed in full, including without limitation, (i) all Claims for unpaid principal, interest and other charges outstanding on the Effective Date and (ii) all Claims for fees and expenses and other charges provided for under the DIP Facility. Except to the extent that a holder of an Allowed DIP Facility Claim and the Debtors, or the Reorganized Debtors, as the case may be, agree to a different treatment, each Allowed DIP Facility Claim shall be paid in full in Cash on the Effective Date from the proceeds of the revolving credit facility under the Restructured Credit Documents; *provided, however*, that the (a) DIP Facility Claims in respect of letters of credit issued (or deemed issued) pursuant to the DIP Facility and (b) DIP Roll-Up Loan Claims shall be assumed by the Reorganized Debtors in full on the Effective Date in accordance with the terms of the Restructured Credit Documents.

### 3.2 Administrative Expense Claims

Administrative Expense Claims are unimpaired and unclassified claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim will receive a distribution of Cash in an amount equal to such Allowed Administrative Expense Claim, without interest, on or as soon as practicable after (but in no event more than ninety (90) days after, unless extended by the Bankruptcy Court) the later of (i) the Effective Date; and (ii) the first Business Day after the date that is ten (10) Business Days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that (y) Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors (these Claims may include, without limitation, post-Petition Date salaries and other post-Petition Date benefits for employees, post-Petition Date rent for facilities and offices, amounts owed to vendors providing goods and services during the Debtors' Reorganization Cases and tax obligations incurred by the Debtors all in the ordinary course of business and after the Petition Date), as debtors or debtors in possession, may be paid in full and performed by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions and (z) Professional Fee Claims shall be paid in accordance with the applicable order of the Bankruptcy Court after filing a fee application, notice and a hearing pursuant to the procedures set forth in Section 13.4 hereof.

### 3.3 Priority Tax Claims

Priority Tax Claims are unimpaired and unclassified claims.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code and at the option of the Debtors, regular installment payments in Cash: (i) of a total value, as of the Effective Date, equal to the Allowed amount of

CH\1131177.18

such Claim; (ii) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; (iii) over a period ending not later than 5 years after the Petition Date; and (iv) in a manner not less favorable than the most favored nonpriority unsecured Claim provided for by the Plan (other than payments in Cash made to a Class of Creditors under section 1122(b) of the Bankruptcy Code). Each holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided herein, and upon such full and final payment, such Lien shall be deemed to have been satisfied and shall be null and void and unenforceable for all purposes.

## 3.4    Class 1: Pre-Petition Secured Revolver Claims

Class 1 Claims are impaired. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

The Pre-Petition Secured Revolver Claims are Allowed in an amount equal to all principal plus all interest (including interest accrued after the Petition Date) at the Allowed Interest Rate (compounded on each interest payment date to the extent not timely paid), and all fees and expenses payable in connection therewith in accordance with the terms of the Existing Senior Loan Agreements.

On the Effective Date, the Reorganized Debtors shall assume the Pre-Petition Credit Agreement and the Pre-Petition Security Documents, in each case, if applicable, as amended or amended and restated pursuant to the Restructured Credit Documents, and without limiting the foregoing, the Reorganized Debtors shall assume the Pre-Petition Secured Revolver Claims on the terms and conditions set forth in the Restructured Credit Documents.

All Pre-Petition Security Documents, if applicable, as amended or amended and restated by the applicable Restructured Credit Documents, shall remain in full force and effect on and after the Effective Date, and all Liens, rights, interests, duties and obligations thereunder shall be shall survive the Effective Date and shall continue to secure all Pre-Petition Secured Revolver Claims assumed by the Reorganized Debtors and all other obligations under the Restructured Credit Documents. Without limiting the generality of the foregoing, all Liens and security interests granted pursuant to the Restructured Credit Documents (including, without limitation, the Pre-Petition Security Documents, if applicable, as amended or amended and restated by the applicable Restructured Credit Documents) to the Pre-Petition Agent and the Pre-Petition Credit Agreement Secured Parties shall be (i) valid, binding, perfected, enforceable, Liens and security interests in the personal and real property described in such documents, with the priorities established in respect thereof under applicable non-bankruptcy law and (ii) not subject to avoidance, recharacterization or subordination under any applicable law. In addition to the foregoing, the relative priorities and rights in such property as among the Pre-Petition Revolver Lenders and the Pre-Petition Term Lenders shall be governed by the Restructured Credit Agreement.

The Restructured Credit Agreement shall be executed, delivered and performed by the Reorganized Debtors in accordance with its terms, and all fees and expenses and other amounts provided for thereunder shall be paid promptly when due.

## 3.5    Class 2:  Pre-Petition Secured Term Loan Claims

Class 2 Claims are impaired.  Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

The Pre-Petition Secured Term Loan Claims are Allowed in an amount equal to all principal plus all interest accrued at the non-default rate prior to the Petition Date, and all fees and expenses payable in connection therewith in accordance with the terms of the Existing Senior Loan Agreements.

On the Effective Date, the Reorganized Debtors shall assume the Pre-Petition Credit Agreement and the Pre-Petition Security Documents, in each case, if applicable, as amended or amended and restated pursuant to the Restructured Credit Documents.  Without limiting the foregoing, on the Effective Date, the Reorganized Debtors shall assume the Pre-Petition Secured Term Loan Claims on the terms and conditions set forth in the Restructured Credit Documents, and as set forth therein, $30 million of Pre-Petition Secured Term Loan Claims shall be restructured into a first-priority first-lien term loan ("Term Loan A"), and the remainder of the Pre-Petition Secured Term Loan Claims shall be restructured pursuant to the Restructured Credit Agreement into a second-priority first-lien term loan ("Term Loan B").

All Pre-Petition Security Documents, if applicable, as amended or amended and restated by the applicable Restructured Credit Documents, shall remain in full force and effect on and after the Effective Date, and all Liens, rights, interests, duties and obligations thereunder shall be shall survive the Effective Date and shall continue to secure all Pre-Petition Secured Term Loan Claims assumed by the Reorganized Debtors and all other obligations under the Restructured Credit Documents.  Without limiting the generality of the foregoing, all Liens and security interests granted pursuant to the Restructured Credit Documents (including, without limitation, the Pre-Petition Security Documents, if applicable, as amended or amended and restated by the applicable Restructured Credit Documents) to the Pre-Petition Agent and the Pre-Petition Credit Agreement Secured Parties shall be (i) valid, binding, perfected, enforceable, Liens and security interests in the personal and real property described in such documents, with the priorities established in respect thereof under applicable non-bankruptcy law and (ii) not subject to avoidance, recharacterization or subordination under any applicable law.  In addition to the foregoing, the relative priorities and rights in such property as among the Pre-Petition Revolver Lenders and the Pre-Petition Term Lenders shall be governed by the Restructured Credit Agreement.

The Restructured Credit Agreement shall be executed, delivered and performed by the Reorganized Debtors in accordance with its terms, and all fees and expenses and other amounts provided for thereunder shall be paid promptly when due.

## 3.6    Class 3, et seq.:  Other Secured Claims

Class 3 Claims are not impaired. Holders of Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 3 Claims are not entitled to vote to accept or reject the Plan

Each Class 3 consists of Other Secured Claims against the applicable Debtor. With respect to each Debtor, this Class will be further divided into subclasses designated by letters of the alphabet (Class 3A, Class 3B and so on), so that each holder of any Other Secured Claim against such Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class, and except for a precautionary class of otherwise unclassified Other Secured Claims.

On the Effective Date, each Allowed Claim in Class 3 shall be, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 3 Claim, at the Debtors' option, (1) Reinstated, (2) satisfied by the Debtors' surrender of the collateral securing such Allowed Claim, (3) offset against, and to the extent of, the Debtors' claims against the holder of such Allowed Claim or (4) otherwise rendered not impaired, except to the extent that the Reorganized Debtors and such holder agree to a different treatment.

### 3.7    Class 4:  Other Priority Claims

Class 4 Claims are not impaired. Holders of Class 4 Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 4 Claims are not entitled to vote to accept or reject the Plan.

Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment of such Allowed Other Priority Claim, each such holder will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 4 Claim, one of the following treatments, as determined by the Debtors and upon the consent of the Requisite Supporting Revolving Lenders and after consultation with the Requisite Supporting Term Lenders, when such Claim becomes Allowed:

> (a)    the Debtors will pay the Allowed Class 4 Claim in full, without interest, in Cash on the Effective Date or as soon thereafter as is practicable; provided that, Allowed Class 4 Claims representing obligations incurred in the ordinary course of business will be paid in full in Cash when such Allowed Class 4 Claims become due and owing in the ordinary course of business; or

> (b)    each such Allowed Class 4 Claim will be treated in any other manner so that such Claim shall otherwise be rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

### 3.8    Class 5:  Pre-Petition Subordinated Note Claims

Class 5 Claims are impaired. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

On the Effective Date, the Pre-Petition Subordinated Note Claims shall be deemed Allowed, for all purposes of the Plan and the Debtors' Reorganization Cases, in the aggregate

amount of (i) $74,815,909.98 (consisting of all principal plus interest accrued prior to the Petition Date) plus (ii) all reasonable pre-petition and post-petition attorneys' fees and expenses payable in connection therewith in accordance with the terms of the Pre-Petition Subordinated Notes and the Note Purchase Agreement dated December 7, 2007, plus (iii) all reasonable pre- and post-petition fees and expenses of CRG Partners as the financial advisor for the holders of the Pre-Petition Subordinated Note Claims, which fees and expenses of CRG Partners shall not exceed $100,000 in the aggregate.

On the Effective Date, holders of Allowed Class 5 Claims will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 5 Claim, (a) a Pro Rata share of the New TWI-Holding Equity representing 7% in the aggregate of the equity of Reorganized TWI-Holding, subject to dilution for New TWI-Holding Equity (in an aggregate amount not to exceed 16.5%, on a fully diluted basis, of such New TWI-Holding Equity) to be issued to officers and directors of the Reorganized Debtors, (b) a Pro Rata Share of the right to purchase one-half of the principal amount of the Investor PIK Notes pursuant to the terms of the Investor PIK Documents, and (c) Cash as payment for and in an amount equal to (i) all reasonable pre-petition and post-petition attorneys' fees and expenses payable in connection with the Plan and the Debtors' Reorganization Cases in accordance with the terms of the Pre-Petition Subordinated Notes and the Note Purchase Agreement dated December 7, 2007, plus (ii) all reasonable pre-petition and post-petition fees and expenses of CRG Partners as the financial advisor for the holders of the Pre-Petition Subordinated Note Claims, which fees and expenses of CRG Partners shall not exceed $100,000 in the aggregate. The holders of Allowed Class 5 Claims will be required to execute the Operating Agreement prior to receiving any distribution of New TWI-Holding Equity under the Plan.

### 3.9    Class 6:  General Unsecured Claims

Class 6 Claims are impaired.  Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

If Class 6 Claims accept the Plan in accordance with Section 4.3 of the Plan, then the holders of Allowed Class 6 Claims will receive, in full and final satisfaction, settlement, release and discharge and in exchange for each such Allowed Class 6 Claim, a Pro Rata share of the Class 6 Recovery.  If Class 6 Claims do not accept the Plan in accordance with Section 4.3 of the Plan, then the holders of Class 6 Claims shall not be entitled to receive or retain any property or distribution under the Plan on account of any Class 6 Claims.

### 3.10    Class 7:  Holdco PIK Note Claims

Class 7 Claims are impaired.

On the Effective Date, the Holdco PIK Note shall be cancelled and be of no further force or effect.  Holders of Holdco PIK Note Claims are not entitled to receive or retain any property or distribution under the Plan on account of any Class 7 Claims.  Therefore, holders of Class 7 Claims are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Holders of Class 7 Claims are not entitled to vote to accept or reject the Plan.

### 3.11    Class 8:  Intercompany Claims

26 - 26 -

Class 8 Claims are not impaired. Holders of Class 8 Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 8 Claims are not entitled to vote to accept or reject the Plan.

The legal, equitable and contractual rights of the holders of Intercompany Claims are unimpaired by the Plan. On or as soon as practicable after the Effective Date, and after consultation with and approval by the Pre-Petition Agent, with such approval not to be unreasonably withheld, all Intercompany Claims will either be Reinstated to the extent determined to be appropriate by the Debtors or Reorganized Debtors or adjusted, continued, or capitalized, either directly or indirectly, in whole or in part. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Bankruptcy Court.

### 3.12 Class 9: Equity Interests in TWI-Holding

Class 9 Equity Interests are impaired.

On the Effective Date, the Equity Interests in TWI-Holding shall be cancelled and be of no further force and effect. Holders of such Equity Interests are not entitled to receive or retain any property or distribution under the Plan on account of any Class 9 Claims. Therefore, holders of Class 9 Equity Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Holders of Class 9 Equity Interests are not entitled to vote to accept or reject the Plan.

### 3.13 Class 10: Equity Interests in all Debtors other than TWI-Holding.

Class 10 Equity Interests are not impaired. The holders of Class 10 Equity Interests are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 10 Equity Interests are not entitled to vote to accept or reject the Plan.

The legal, equitable and contractual rights of the holders of Equity Interests in any Debtor other than TWI-Holding are unimpaired the Plan. On the Effective Date, such Equity Interests shall be Reinstated to the extent determined to be appropriate by the Debtors or Reorganized Debtors.

## ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN

### 4.1 Presumed Acceptance of Plan

Classes 3, 4, 8 and 10 are not impaired under the Plan, and are, therefore, conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### 4.2 Voting Classes

Classes 1, 2, 5, and 6 are impaired under the Plan, and holders of Class 1, 2, 5 and 6 Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

CH\1131177.18

### 4.3 Acceptance by Impaired Classes of Claims

Pursuant to Section 1126(c) of the Bankruptcy Code and except as otherwise provided in Section 1126(e) of the Bankruptcy Code, an impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

### 4.4 Deemed Rejection of Plan

Classes 7 and 9 are impaired and shall receive no property or distribution under the Plan on account of their Claims or Equity Interests and are, therefore, deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

### 4.5 Cramdown

The Debtors request Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan in accordance with Section 13.5 hereof to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

### 4.6 Substantive Consolidation of the Debtors for Voting and Distribution Purposes Only

On and after the Effective Date, except for Class 3 Claims, each and every Claim in the Debtors' Reorganization Cases against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed a single consolidated Claim against and obligation of all of the consolidated Debtors. Such limited consolidation shall not affect (other than for Plan voting and distribution purposes) (i) the legal and corporate structures of the Reorganized Debtors, or (ii) pre- and post-Petition Date Liens, guarantees and security interests that are required to be maintained (x) in connection with contracts that were entered into during the Debtors' Reorganization Cases or that have been or will be assumed pursuant to Section 365 of the Bankruptcy Code, (y) in connection with the terms of the Restructured Credit Documents, the Investor PIK Documents, the New TWI-Holding Equity and (z) pursuant to the terms and conditions contained in this Plan. From and after the Effective Date, each of the Reorganized Debtors will be deemed a separate and distinct entity, properly capitalized, vested with all of the assets of such debtor as they existed prior to the Effective Date and having the liabilities and obligations provided for under this Plan.

### 4.7 Continued Corporate Existence

The Reorganized Debtors will continue to exist as separate corporate entities following confirmation and consummation of this Plan in accordance with the laws of their respective states of incorporation and pursuant to their respective certificates or articles of incorporation and bylaws in effect prior to the Effective Date, except to the extent that the Debtors' certificates or articles of incorporation and bylaws are amended pursuant to this Plan. On or as soon as practicable after the Effective Date, the Reorganized Debtors will issue new equity interests pursuant to Section 4.9 of this Plan.

## 4.8 Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to distributions under this Plan or as otherwise provided herein, on the Effective Date, (a) all agreements and other documents (other than the assumed executory contracts and the Existing Senior Loan Agreements, if applicable, as amended or amended and restated by the Restructured Credit Documents) evidencing Claims or Equity Interests or rights of any holder of a Claim or Equity Interest against any of the Debtors or Reorganized Debtors, and (b) all notes and share certificates and other documents evidencing such Claims and Equity Interests and any agreements or guarantees related thereto will be canceled and terminated and deemed null and void, satisfied and discharged and of no force and effect as against any of the Debtors or the Reorganized Debtors without further act or action under any applicable agreement, law, regulation, order or rule except to the extent specifically provided otherwise herein. Except as otherwise provided herein, all obligations of the Debtors and Reorganized Debtors under such agreements and other documents governing such Claims and Equity Interests, as the case may be, will be discharged.

## 4.9 Issuance of New Equity Interests

On or as soon as practicable after the Effective Date, the Reorganized Debtors shall issue all securities to be issued in accordance with the Plan, including without limitation, the New Equity, each of which shall be distributed as referenced in the Plan.

## 4.10 Revesting of Assets

Pursuant to Section 1141(b) of the Bankruptcy Code, all property of the respective estate of each Debtor, together with any property of each Debtor that is not property of its estate and that is not specifically disposed of pursuant to this Plan, or by order of the Bankruptcy Court, will revest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court. As of the Effective Date, all property of each Reorganized Debtor will be free and clear of all Liens, Claims and Equity Interests except as specifically provided pursuant to this Plan, the Confirmation Order, the Restructured Credit Documents and the Investor PIK Documents.

## 4.11 Rights of Action; Reservation of Rights

Except as otherwise provided pursuant to this Plan or the Confirmation Order, or any other order of the Bankruptcy Court, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, and except with respect to the Released Parties to the extent set forth herein, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtors will reserve and retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all rights, claims, causes of action, rights of set off, suits, proceedings or other legal or equitable defenses accruing to the Debtors or their estates pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including without limitation, any avoidance or recovery actions and, to the extent permissible under applicable non-bankruptcy law, any suits or proceedings for recovery under any policies of insurance issued to or on behalf of the Debtors or any judgment obtained on

CH\1131177.18

behalf of any of the Debtors. Except as otherwise expressly set forth in this Plan, nothing contained in this Plan or the Confirmation Order will be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Debtors or the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, the Reorganized Debtors, their officers, directors, managers or representatives and (ii) the turnover of any property of any of the Debtors' or the Reorganized Debtors' estates. This Plan provides that the Reorganized Debtors will be deemed the appointed representative to, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, causes of action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successors who hold such rights. Any person or entity defending against a Potentially Insured Claim, the Debtors, the Reorganized Debtors, and any Insurer shall have the right to assert all rights and defenses of the Debtors, both legal and equitable (including setoff or recoupment), with respect to any Potentially Insured Claims.

## 4.12    Effectuating Documents; Further Transactions

The chief executive officer, chief financial officer or any other appropriate officer of TWI or any applicable Debtor, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions herein. The secretary or assistant secretary of TWI or any applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

## 4.13    Sources of Liquidity

### 4.13.1    Restructured Credit Documents

On or prior to the Effective Date, the Restructured Credit Documents, in the forms attached hereto or as otherwise approved by the Debtors and the Pre-Petition Agent, shall become effective. The Restructured Credit Documents shall be binding on all holders of Class 1 Claims and Class 2 Claims.

### 4.13.2    Sale of Investor PIK Notes and New TWI-Holding Equity

Pursuant to the Investor PIK Documents, the Investor PIK Note Purchasers have agreed to invest an aggregate of $12,000,000 (U.S. twelve million dollars) in immediately available funds in the Reorganized Debtors on the Effective Date, which funds shall be used as additional working capital for the Reorganized Debtors on the terms and conditions set forth in the Investor PIK Documents and as set forth herein.

In consideration for the amount to be paid by the Investor PIK Note Purchasers under the Investor PIK Documents, the Investor PIK Note Purchasers will receive, on the Effective Date, pursuant to this Plan and the Investor PIK Documents, (a) paid-in-kind interest bearing notes in the principal amount of $12,000,000 (U.S. twelve million dollars), in the form included in the

Investor PIK Documents attached hereto as Exhibit 3 or otherwise in form and substance satisfactory to (i) the Debtors and the Reorganized Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) the Requisite Supporting Noteholders (the "Investor PIK Notes"), and (b) 93% of the New TWI-Holding Equity, subject to dilution for New TWI-Holding Equity (in an aggregate amount not to exceed 16.5%, on a fully diluted basis, of such New TWI-Holding Equity) to be issued to officers and directors of the Reorganized Debtors, and to be allocated among the Investor PIK Note Purchasers pursuant to this Plan and according to the Investor PIK Documents in the form attached hereto as Exhibit 3 or otherwise acceptable in form and substance to (i) the Debtors and the Reorganized Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) the Requisite Supporting Noteholders. Subject to, and in accordance with the terms and conditions of, the Intercreditor Agreement and the Restructured Credit Agreement, the Investor PIK Notes shall be junior in right of payment to the Revolving Loan (as defined in the Restructured Credit Agreement) and Term Loan A, and except in certain circumstances set forth in the Intercreditor Agreement (where the Investor PIK Notes shall be junior in right of payment to the Term Loan B), the Investor PIK Notes shall be pari passu with Term Loan B.

In addition, the Investor PIK Note Purchasers shall receive on the Effective Date payment in Cash of all unpaid reasonable pre-petition and post-petition attorneys' fees and expenses.

The Investor PIK Note Purchasers will be required to execute the Operating Agreement prior to receiving any distribution of New TWI-Holding Equity.

### 4.13.3 **Sale of Cylinders Business**

Pursuant to the Motion Pursuant To 11 U.S.C. §§ 105(A), 363, 365 And Fed. R. Bankr. P. 2002, 6004, 6006 For Entry Of An Order (A) Establishing Bidding And Auction Procedures Related To The Sale Of The Debtors' Cylinders Business And Related Acquired Assets; (B) Approving Bid Protections; (C) Scheduling An Auction And Sale Hearing For The Sale Of The Debtors' Acquired Assets; (D) Establishing Certain Notice Procedures For Determining Cure Amounts; (E) Approving Form And Manner Of Notice Of All Procedures, Protections, Schedules And Agreements; And (F) Granting Certain Related Relief ("Cylinders Sale Motion"), dated April 30, 2010, and scheduled to be heard on the May 12, 2010, the Debtors have Bankruptcy Court approval of certain procedures in contemplation of the sale of the assets and business of debtor TWI Cylinders LLC. Closing of the sale contemplated in the Cylinders Sale Motion shall be, and same is, contingent upon the confirmation of this Plan.

## ARTICLE V. RELEASES AND INJUNCTIONS RELATED TO RELEASES

### 5.1 Exculpation

The Debtors, the Reorganized Debtors, and the other Released Parties shall have no liability to any Person for any act or omission in connection with, or arising out of, the Debtors' Reorganization Cases, the Disclosure Statement, this Plan, the solicitation of votes for and the pursuit of confirmation of this Plan, the formulation, preparation, implementation or consummation of this Plan or the transactions contemplated thereby, including the pre-petition

and post-petition negotiations with respect thereto, the administration of this Plan or the property to be distributed under this Plan or the Debtors' Reorganization Cases or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan. All Causes of Action based upon or arising out of all of the foregoing will be forever waived and released by any Person as of the Effective Date; provided, however, that nothing in this section shall affect the liability (if any) of any Person that otherwise would result from any action or omission to the extent that such action or omission is determined in a Final Order to have constituted (i) a breach of any of its obligations under this Plan or any contract, release or other agreement or document entered into in connection herewith—or; (ii) intentional acts that constitute fraud, gross negligence, or willful misconduct; or, (iii) arising from the obligation of the Debtors to comply with relevant state and federal tax laws.

## 5.2    Releases by Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors, and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date of the Plan, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors and their estates, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or that could be asserted by or on behalf of the Debtors, the Reorganized Debtors or their estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors or their estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the purchase, sale, or rescission of the purchase or sale of any of the Pre-Petition Subordinated Notes, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the related Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a final and non-appealable order of a court of competent jurisdiction to constitute willful misconduct or gross negligence by such Released Party.

**5.3     Releases by Holders of Claims and Equity Interests**

As of the Effective Date of the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) each holder of a Claim that votes to accept the Plan, solely in its capacity as the holder of such Claim, and (ii) to the fullest extent permissible under applicable law, ~~as such law may be extended or interpreted after the Effective Date,~~ each person or entity (other than a Debtor), which has held, holds or may hold a Claim ~~or Equity Interest in or relating to the Debtors~~ and solely in its capacity as the holder of such Claim ~~or Equity Interest~~, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, Equity Interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or that could be asserted by or on behalf of any such holder, person or entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such holder, person or entity would have been legally entitled to assert in its own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the purchase, sale, or rescission of the purchase or sale of any of the Pre-Petition Subordinated Notes, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the related Disclosure Statement, any Plan Documents, or related agreements, instruments, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a final and non-appealable order of a court of competent jurisdiction to constitute willful misconduct or gross negligence of such Released Party.

Notwithstanding anything to the contrary contained in the Plan, the Disclosure Statement or the Confirmation Order, no Released Party shall be discharged, exculpated, or released on any claim, now existing or hereafter arising, under ERISA with respect to the Pension ~~Plan~~Plans, and there shall be no injunction against the assertion of any such claim.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in Sections 5.2 and 5.3 of the Plan do not release (i) any Claims or liabilities assumed by any Reorganized Debtor pursuant to the Plan or any other Plan Documents or otherwise arising on or after the Effective Date under any of the Plan Documents <u>including, but not limited to, Allowed Administrative Claims arising in the ordinary course pursuant to contracts (including, but not limited to, Insurance Policies and Related Agreements) assumed by or entered into by the Debtors after the Petition Date</u> or (ii) any post-Effective Date obligations of any party under the Plan or any other Plan Document.

**5.4     Injunction Related to Releases**

Except as provided in the Plan, the other Plan Documents or the Confirmation Order, as of the Confirmation Date, subject to the occurrence of the Effective Date, all Persons that have

held, currently hold or may hold Claims or Equity Interests that (x) are subject to exculpation pursuant to Section 5.1, (y) have been released pursuant to Sections 5.2 and 5.3, or (z) are discharged pursuant to Section 11.1, are permanently enjoined from taking any of the following actions against the Debtors or their property, or any of the Released Parties, on account of Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action, in each case in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

~~By accepting distribution pursuant~~Notwithstanding anything contained in this Section 5.4 to the ~~Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 5.4.~~contrary, the rights of creditors and other parties-in-interest herein to assert as a defense the right of set-off, recoupment, or both, as the case may be, shall not be impaired.  Further, notwithstanding anything contained in this Section 5.4 to the contrary, the right, if any, of state and federal tax authorities to collect tax liabilities from non-debtors entities, shall not be impaired.

## 5.5    No Waiver

The release set forth in this Plan does not limit, abridge, or otherwise affect the rights of the Reorganized Debtors to enforce, sue on, settle, or compromise the rights, claims and other matters retained by the Reorganized Debtors pursuant to this Plan.

## 5.6    Deemed Consent

By voting to accept this Plan or accepting any distribution directly under this Plan, each holder of a Claim will be deemed to the fullest extent permitted by applicable law to have specifically consented to the releases and injunctions set forth in this Article V.

## 5.7    Survival of Indemnification Obligations to Personnel

As to causes of action arising or relating to events taking place prior to, on and subsequent to the Petition Date, the Debtors shall defend, indemnify, reimburse or limit the liability of any of their respective directors, managers and officers who serve as directors, managers or officers on and after the Effective Date, including without limitation, those directors, officers and managers who are listed in the Disclosure Statement, to the fullest extent permitted under applicable state law (collectively, the "Indemnification Obligations") for any liabilities asserted against such persons by reason of their service as directors, managers or officers of the Debtors, other than in respect of any claims conclusively determined to have arisen by virtue of fraud or willful misconduct.  Such Indemnification Obligations will survive confirmation of this Plan, remain unaffected thereby, and will not be discharged and shall, on the Effective Date, become obligations of the Reorganized Debtors; provided, that such indemnification, defense, reimbursement or limitation will be limited to the extent such directors, mangers or officers have been released pursuant to the Plan as Released Parties under this Plan

and provided further that the Debtors shall be required to indemnify a director, manager or officer in connection with a proceeding (or part thereof) initiated by such director, manager or officer only if such proceeding (or part thereof) was authorized by the board of directors or managers of the applicable Debtor. Pursuant to this Plan and Bankruptcy Code Section 502(e), all contingent and unliquidated Claims of Debtors' respective current and former directors, managers, officers and employees for indemnification, defense or reimbursement of any liability shall be deemed expunged and withdrawn as of the Effective Date.

## ARTICLE VI. CORPORATE STRUCTURE OF THE REORGANIZED DEBTORS

### 6.1    Corporate Action

Each Reorganized Debtor will file its Amended Certificate and Amended Bylaws or Operating Agreement, as appropriate, (each in such form as may be acceptable to such Debtor and the Pre-Petition Agent) with the Secretary of State of the State of Delaware on the Effective Date. Any filings or other actions to be taken with respect to the Reorganized Debtors will be done as soon as practicable on or after the Effective Date.

On the Effective Date, the adoption of each Amended Certificate and each of the Amended Bylaws and Operating Agreement will be deemed to have been authorized and approved in all respects to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order or rule, including without limitation, any action by the stockholders or shareholders or members of the Reorganized Debtors pursuant to § 303 of the General Corporation Law of the State of Delaware and other applicable corporation, limited liability company and limited partnership law of jurisdictions in which the Reorganized Affiliates are incorporated, organized or formed.

In addition, on the Effective Date, the cancellation of all Equity Interests in TWI-Holding, the authorization and issuance of the TWI-Holding Equity, the Reinstatement of the Equity Interests in all Debtors other than TWI-Holding, and all other matters provided herein involving the corporate and capital structure of the Debtors, or the Reorganized Debtors or corporate or other action by any of the Debtors or the Reorganized Debtors will be deemed to have occurred, be authorized, and will be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order or rule, including without limitation, any action by the stockholders, shareholders, members, managers, officers or directors of any of the Debtors, any of the Reorganized Debtors pursuant to § 303 of the General Corporation Law of the State of Delaware and other applicable corporation, limited liability company and limited partnership law of jurisdictions in which the Reorganized Affiliates are incorporated, organized or formed. Entry of the Confirmation Order will constitute approval of the Plan Documents and all such transactions subject to the occurrence of the Effective Date.

### 6.2    Corporate Structure of Reorganized Debtors

Each Amended Certificate will, among other things: (a) include, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, (b) to the extent necessary or appropriate, include such provisions as may be necessary to effectuate the Plan and (c) with respect to the TWI-Holding Amended Certificate, to the extent

necessary or appropriate, include any restrictions on the transfer of the New TWI-Holding Equity if and to the extent approved by the holders of Pre-Petition Subordinated Note Claims. The Amended Bylaws and Operating Agreement will provide for the corporate governance of the Reorganized Debtors.

### 6.3 Board of Directors/Managers and Officers of Reorganized Debtors

**Reorganized TWI-Holding's Board of Managers.**

The Board of Managers of TWI-Holding in existence prior to the Effective Date shall continue in office until the designation of a new Board of Managers in accordance with the Operating Agreement.

**Reorganized TWI-Holding's Officers.**

The officers of Reorganized TWI-Holding will be the same individuals who served as officers of TWI-Holding immediately prior to the Effective Date.

**Reorganized Affiliates.**

The initial Boards of Directors or Managers, as appropriate, of the Reorganized Affiliates shall consist of such number of members as Reorganized TWI-Holding in its sole discretion shall determine. The members of such boards shall be appointed by Reorganized TWI-Holding and may include one or more executive officers or managers or directors of Reorganized TWI-Holding. Each of the members of these initial Boards of Directors or Managers will serve in accordance with the Reorganized Affiliates' respective certificates or articles of incorporation or organization or formation, as appropriate, and bylaws or operating agreements, as the same may be amended from time to time, and applicable non-bankruptcy laws.

The officers of the Reorganized Affiliates will be the individuals who serve as officers of such Debtors immediately prior to the Effective Date. Such officers will serve in accordance with the bylaws of the Reorganized Affiliates, as applicable, any employment agreement with such Reorganized Affiliates and applicable non-bankruptcy law. After the Effective Date, the respective new boards of directors or managers of the Reorganized Affiliates, as appropriate, will determine the officers of the Reorganized Affiliates.

### 6.4 Indemnification of Directors and Officers

The Amended Certificate and the certificates or articles of incorporation or organization or formation of the Reorganized Affiliates will authorize the Reorganized Debtors to indemnify and exculpate their respective officers, directors, managers and agents to the fullest extent permitted under applicable state law.

### 6.5 Operating Agreement

The Operating Agreement will be in the form attached hereto as Exhibit 7 or otherwise in form and substance satisfactory to the (i) the Debtors and the Reorganized Debtors, (ii) the

Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) the Requisite Supporting Noteholders.

## ARTICLE VII. DISTRIBUTIONS UNDER THIS PLAN

**7.1    Distributions to Holders of Allowed Claims Only**

Until a Disputed Claim becomes an Allowed Claim, distributions of Cash, securities and/or other instruments or property otherwise available to the holder of such Claim will not be made.

**7.2    Distribution Record Date**

As of the close of business on the date the Clerk of the Bankruptcy Court enters the Confirmation Order or such other date as may be designated in the Confirmation Order, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their agents (other than Classes 1 and 2) will be deemed closed, and there will be no further changes in the record holders of any of the Claims or Equity Interests (other than Classes 1 and 2). The Debtors will have no obligation to recognize any transfer of any Claims or Equity Interests occurring on or after the Distribution Record Date (other than Classes 1 and 2). The Debtors or Reorganized Debtors, as applicable, will recognize only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date. The Distribution Record Date is the record date for purposes of making distributions under this Plan.

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed will be deemed to have been completed as of the required date.

**7.3    Disbursing Agent**

Reorganized TWI-Holding, as Disbursing Agent, or such other entity designated by Reorganized TWI-Holding as a Disbursing Agent, will make all distributions under this Plan when required by this Plan. A Disbursing Agent will not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**7.4    Rights and Powers of the Disbursing Agent**

The Disbursing Agent will be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (b) make all distributions contemplated thereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

**7.5    Delivery of Distributions**

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Equity Interest will be made at the address of such holder as set forth in the Debtors' books and records and/or on the Schedules filed with the Bankruptcy Court unless the Debtors or their Disbursing Agent have been notified in writing of a change of address, including without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such books and records or Schedules for such holder; provided, however, that all distributions to the DIP Lenders under this Plan will be made by the Disbursing Agent to the DIP Agent for further disbursement to the DIP Lenders.

In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent will use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution will be made to such holder without interest or accruals of any kind. Such distributions will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code on the one year anniversary of the Effective Date. After that date, all unclaimed property or interest in property will revert to the Reorganized Debtors and the Claim of any other holder to such property or interest in property will be discharged and forever barred.

## 7.6 Time Bar to Cash Payments

Checks issued by the Reorganized Debtors on account of Allowed Claims will be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Holders of Allowed Claims shall make all requests for reissuance of checks to the Reorganized Debtors. Any Claim in respect of a voided check must be made on or before the one year anniversary of the date of issuance. After such date, all Claims and respective voided checks will be discharged and forever barred and the Reorganized Debtors will retain all moneys related thereto.

## 7.7 Fractional Shares

No fractional shares or units of New Equity will be issued or distributed under this Plan. The actual distribution of shares and units of New Equity will be rounded to the next higher or lower whole number as follows: (a) fractions of one-half (1/2) or less shall be rounded to the next lower whole number, and (b) fractions of greater than one-half (1/2) shall be rounded to the next higher whole number. The total number of shares or units, as applicable, of New Equity to be distributed herein will be adjusted as necessary to account for such rounding. No consideration will be provided in lieu of fractional shares or units that are rounded down.

## 7.8 Set-Offs

Other than with respect to the Claims of Pre-Petition Credit Agreement Secured Parties, the DIP Agent and DIP Lenders (as to which any and all rights of setoff or recoupment have been waived by the Debtors and the Reorganized Debtors), the Debtors or the Reorganized Debtors may, but are not required to, set off or recoup against any Allowed Claim, any claims, rights, or cause of action of any nature whatsoever that the Debtors or Reorganized Debtors may have against the holder of such Claim. Neither the failure to set-off nor the allowance of any

Claim under this Plan will constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim, right or cause of action.

# ARTICLE VIII. PROCEDURES FOR DISPUTED CLAIMS

## 8.1    Resolution of Disputed Claims; Estimation of Claims

Except as set forth in any order of the Bankruptcy Court, any holder of a Claim against the Debtors shall file a Proof of Claim with the Bankruptcy Court or with the agent designated by the Debtors for this purpose on or before Claims Bar Date. If any such holder of a Claim disagrees with the Debtors' determination with respect to the Allowed amount of such holder's Claim, the Claim will be a Disputed Claim. The Debtors prior to the Effective Date, and thereafter the Reorganized Debtors, shall have the exclusive authority to file objections on or before the Claims Objection Bar Date, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether classified or otherwise. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Notwithstanding the foregoing, the Reorganized Debtors must receive the prior written approval of the Requisite Supporting Revolving Lenders and the Requisite Supporting Term Lenders prior to entering into any settlement or compromise of any Disputed Claim if the face amount of the Disputed Claim is in excess of $100,000.

Any Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

## 8.2    No Distributions Pending Allowance

Notwithstanding any other provision in this Plan, except as otherwise agreed by the Debtors or the Reorganized Debtors, no partial payments or distributions will be made with respect to a Disputed Claim or Equity Interest unless and until all objections to such Disputed Claim or Equity Interest have been settled or withdrawn or have been determined by Final Order.

## 8.3    Distributions After Allowance

To the extent a Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest, the Disbursing Agent will distribute to the holder thereof the distributions, if any, to which such holder is then entitled under this Plan. Any such distributions will be made in

accordance with, and at the time mandated by this Plan. No interest will be paid on any Disputed Claim or Equity Interest that later becomes an Allowed Claim or Equity Interest.

## ARTICLE IX. EXECUTORY CONTRACTS

### 9.1    Assumption of Executory Contracts and Unexpired Leases

As of the Effective Date, all executory contracts or unexpired leases listed on Exhibit 9[2] hereto shall be and shall be deemed to be rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. All executory contracts or unexpired leases of the Reorganized Debtors not listed on Exhibit 9 hereto, and not otherwise the subject of a pending objection or pleading seeking to reject or otherwise contesting the executory contract or unexpired lease, are hereby assumed as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to Section 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

### 9.2    Cure of Defaults of Assumed Executory Contracts and Unexpired Leases

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied by payment of the default amount in Cash on the Effective Date, or on such other terms as the parties to such executory contracts or unexpired leases may agree. The Debtors in their discretion may file with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to any matter pertaining to the assumption. All such objections shall be litigated to Final Order, provided, however that the Debtors may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections. In the event of a dispute regarding: (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption of any executory contracts or unexpired leases; provided, however, that based on the Bankruptcy Court's resolution of any such dispute, the applicable Debtor or Reorganized Debtor shall have right, within 30 days after the entry of such Final Order and subject to approval of the Bankruptcy Court pursuant to Section 365 of the Bankruptcy Code, to reject the applicable executory contract or unexpired lease.

---

[2] To include Harsco APA, to the extent executory.

### 9.3 Compensation and Benefit Programs

The Debtors are parties to four collective bargaining agreements with representatives of the Debtors' employees at the following facilities:

| Collective Bargaining Agreement | Facility |
|---|---|
| Agreement between American Welding & Tank, LLC and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC, Local Union 1915 | Fremont, OH |
| Agreement between Sherwood Valve LLC and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC, Local Union 7139-02 | Washington, PA |
| Agreement between Taylor-Wharton Cylinders, Harsco Gas Serv and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO-CLC, Local Union 1688-06 | Harrisburg, PA |
| Agreement between Taylor-Wharton Cryogenics LLC and Local #441, Sheet Metal Workers International Association | Theodore, AL |

The Debtors have engaged in bargaining with the unions at each facility in respect of proposed changes to the subject collective bargaining agreements. If an agreement is reached prior to the Effective Date regarding changes to a collective bargaining agreement, the Debtors will file a motion to assume that collective bargaining agreement as amended. If an agreement is not reached, the Debtors may file a motion under section 1113 of the Bankruptcy Code to terminate the affected collective bargaining agreement. If the Debtors seek to reject a collective bargaining agreement under section 1113, and if the Bankruptcy Court approves such rejection, the Debtors also may seek to terminate any Pension Plan required to be maintained under such collective bargaining agreement.

Except for the foregoing as applied to the collective bargaining agreements, and/or as otherwise expressly provided under the Plan in section 9.1 (including Exhibit 9 hereof), section 9.4, or elsewhere in this Plan , all employment and severance policies and agreements, and all compensation, incentive and benefit plans, policies and programs of the Debtors, in each case applicable to their non-represented employees, retirees and non-employee directors or members of the boards of directors, including without limitation, collective bargaining agreements, the

~~Employee Retirement Plans and~~ all other savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans, are treated as executory contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code. <u>Notwithstanding the provisions of Section 9.4 of this Plan, if the Debtors are unable to reach an agreement with their unions and proceed pursuant to section 1113 of the Bankruptcy Code, they reserve the right, *inter alia*, to seek a termination of the Pension Plans in accordance with ERISA.</u>

## <u>9.4</u>    <u>Assumption of Pension Plans</u>

<u>The Debtors are contributing sponsors of the Pension Plans within the meaning of ERISA and 29 U.S.C. § 1301(a)(13) in particular. The Pension Plans are tax-qualified defined benefit pension plans covered by the provisions of ERISA, 29 U.S.C. §§ 1001 et seq. Upon confirmation of the Plan, the reorganized Debtors shall assume the Pension Plans and satisfy the minimum funding standards pursuant to 26 U.S.C. § 412 and 29 U.S.C. § 1082 and administer the Pension Plans in accordance with their terms and the provisions of ERISA and the Internal Revenue Code. Nothing contained herein shall be deemed to modify the existing terms of the Pension Plans, including, without limitation, the reorganized Debtors' ability to terminate and/or amend the Pension Plans consistent with ERISA. Furthermore, nothing in the Plan shall be construed as discharging, releasing or relieving the Debtors or the Debtors' successors, including the reorganized Debtors, from any liability imposed under ERISA, the Bankruptcy Code, or any related law or regulatory provision with respect to the Pension Plans or the Pension Benefit Guaranty Corporation. Notwithstanding any provision of the Plan or the confirmation order, the Pension Benefit Guaranty Corporation and the Pension Plans shall not be enjoined or precluded from enforcing any such liability.</u>

## ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

### 10.1    Conditions Precedent to Confirmation

This Plan will not be confirmed and the Confirmation Order will not be entered until and unless each of the following conditions has occurred or has been waived in accordance with the terms of this Plan: (a) the Confirmation Order is acceptable in form and substance to (i) the Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders; (b) all of the Plan Documents are acceptable in form and substance to (i) the Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders; and (c) the Confirmation Order is entered no later than 45 days after the Petition Date or such later date to which the Requisite Supporting Revolving Lenders, the Requisite Supporting Term Lenders and, to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders agree.

**10.2    Conditions Precedent to the Effective Date**

The Effective Date of this Plan will not occur unless and until each of the following conditions has occurred or will occur contemporaneously with the consummation of this Plan:

(a)    the Confirmation Order shall have been entered, shall have become a Final Order, and shall be acceptable to (i) the Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders and shall otherwise be in full force and effect;

(b)    all actions, documents and agreements (in form and substance satisfactory (i) the Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders) necessary to implement this Plan and the transactions contemplated by this Plan shall have been executed or become effective;

(c)    the commitments under the DIP Facility shall have terminated, and all of the obligations owing under or in respect of the DIP Facility (including without limitation, all principal, interest, fees and expenses owed thereunder) shall have been paid in full in Cash by wire transfer of immediately available funds or assumed by the Reorganized Debtors as contemplated by this Plan and in accordance with the DIP Facility and the Restructured Credit Documents, and the commitments thereunder terminated, satisfied or assumed as to the outstanding DIP Letters of Credit as contemplated by this Plan and the Restructured Credit Documents;

(d)    the Exit Credit Documents shall have been executed and delivered by all parties thereto, and all conditions to the initial draw thereunder shall have been satisfied in accordance with the terms thereof;

(e)    the New Equity to be issued under this Plan shall have been duly authorized and, upon issuance, shall be validly issued and outstanding;

(f)    any alteration of any term or provision of this Plan by the Bankruptcy Court shall be acceptable to (i) the Debtors, (ii) the Requisite Supporting Revolving Lenders, (iii) the Requisite Supporting Term Lenders and (iv) to the extent required pursuant to the Restructuring Support Agreement, the Requisite Supporting Noteholders;

(g)    all fees, costs and expenses required to be paid under the DIP Facility, the Existing Senior Loan Agreements, the Exit Credit Documents or the Plan, including without limitation, those of the DIP Agent incurred under the DIP Facility and the Pre-Petition Agent incurred under the Pre-Petition Credit Agreement, shall have been paid on or prior to the Effective Date;

(h)    all reasonable pre-petition and post-petition attorneys' fees, costs and expenses that are required to be paid under the Pre-Petition Subordinated Notes, the Note Purchase Agreement dated December 7, 2007, or the Investor PIK Documents, and up to $100,000 (but in no event more than $100,000) of the reasonable fees, costs and expenses of

CRG Partners, as financial advisor to the Pre-Petition Subordinated Noteholders incurred prior to the Petition Date that are required to be paid under the Pre-Petition Subordinated Notes, the Note Purchase Agreement dated December 7, 2007, or the Investor PIK Documents, shall have been paid on or prior to the Effective Date;

        (i)      Each Reorganized Debtor shall have filed with the Secretary of State of Delaware its Amended Certificate and Amended Bylaws or Operating Agreement; and

        (j)      Reorganized TWI-Holding and each of the other parties thereto shall have executed the Operating Agreement, the Restructured Credit Documents and the Investor PIK Documents.

        <u>(k)      The sale contemplated by the Cylinders Sale Motion, as more fully described in section 4.13.3 of this Plan, shall have no unfulfilled conditions to closing.</u>

## 10.3   Waiver of Conditions to Confirmation and Effective Date

The Debtors, with the consent of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders, may waive, in whole or in part, any of the conditions to the confirmation or effectiveness of this Plan. Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

## 10.4   Effect of Failure of Conditions of the Effective Date

Unless extended by the mutual agreement of (w) the Debtors, (x) the Requisite Supporting Revolving Lenders, (y) the Requisite Supporting Term Lenders and (z) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders, in the event the conditions specified in Section 10.2 of this Plan have not been satisfied or waived in accordance with Section 10.3 of this Plan by the date that is thirty (30) days after entry of the Confirmation Order, (i) the Confirmation Order will be vacated; (ii) no distributions under this Plan will be made; (iii) the Debtors and all holders of Claims and Equity Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all the Debtors' obligations with respect to the Claims and Equity Interests will remain unchanged and nothing contained in this Plan will be deemed to constitute a waiver or release of any Claims or claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any proceedings further involving the Debtors.

## ARTICLE XI. EFFECT OF CONFIRMATION

## 11.1   Discharge of Claims and Termination of Equity Interests

Except as otherwise provided herein or in the Plan Documents, the treatment of all Claims against, or Equity Interests in, the Debtors hereunder will be in exchange for and in complete satisfaction, discharge and release of all (a) Claims against, or Equity Interests in, the Debtors of any nature whatsoever, known or unknown, including without limitation, any interest

accrued or expenses incurred thereon from and after the Petition Date, and (b) all Claims against and Equity Interests in the Debtors' estates or properties or interests in property. Except as otherwise provided herein or in the Plan Documents, upon the Effective Date, all Claims against and Equity Interests in the Debtors will be satisfied, discharged and released in full exchange for the consideration provided hereunder. Except as otherwise provided herein or in the Plan Documents, all entities will be precluded from asserting against the Debtors or the Reorganized Debtors or their respective properties or interests in property any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Nothing in this Plan or the Confirmation Order shall be construed as discharging or releasing any liability to the PBGC or the Pension Plans of the Debtors or the Debtors' successors, including the Reorganized Debtors, or any fiduciary to the Pension Plans, for any liabilities under any law or regulation governing the Pension Plans. The PBGC and the Pension Plans shall not be enjoined or precluded from enforcing such liabilities as a result of any provision of this Plan or the Confirmation Order. Additionally, nothing in the Confirmation Order or this Plan shall release, discharge, enjoin, or preclude any environmental Claim of any governmental unit against the Debtors (a) that had not arisen (and therefore could not have been asserted) as of the Effective Date or (b) under environmental statutes or regulations that any entity would be subject to subsequent to the Effective Date as the owner or operator of property after the Effective Date and cannot, as a matter of law, be discharged under the Bankruptcy Code. Moreover, nothing in the Confirmation Order or the Plan releases, nullifies, enjoins, or precludes any liability of non-Debtors to governmental units arising exclusively under environmental statutes or regulations.

## 11.2    Binding Effect.

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan will bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan. This Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests and their respective successors and assigns, including without limitation, the Reorganized Debtors.

## 11.3    Preservation of Insurance.

The Debtors' discharge from all Claims and Equity Interests as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any Insurance Policy that may cover Claims against the Debtors, the Reorganized Debtors (including without limitation, such entities' officers, directors and managers) or any other person or entity. Notwithstanding the discharge of the Debtors from all Claims and Interests pursuant to the Plan, the Reorganized Debtors shall continue to cooperate with the Insurers in the defense, investigation, and settlement of Potentially Insured Claims to the extent such cooperation does not impose a significant cost or burden on the Reorganized Debtors; it being understood that nothing herein shall affect or impair the right of any Insurer to disclaim coverage with respect to a given claim based on a failure of the Reorganized Debtors to cooperate to the full extent

~~required by the language of a relevant Insurance Policy with respect to that Claim. Nothing in this~~Nothing in the Disclosure Statement, Plan or the Confirmation Order ~~shall affect or impair the right of any Insurer to disclaim coverage to the extent permissible~~in any way: (i) precludes or limits the rights of the Insurers and the Debtors (or after the Effective Date, the Reorganized Debtors) to contest and/or litigate with any party, including, without limitation, the Debtors (or after the Effective Date, the Reorganized Debtors) the existence, primacy and/or scope of available coverage under any ~~Insurance Policy or applicable law. Notwithstanding the foregoing, the fact that the holder of an Insured Claim has received a distribution under the Plan in lieu of being paid in Cash with respect to any deductible or self insured retention amount shall not be a basis upon which an Insurer may disclaim coverage.~~ alleged applicable policy; (ii) permits any holder of a Potentially Insured Claim or other Claim to recover the same amounts from the Insurers and any other party including, but not limited to, the Debtors (or after the Effective Date, the Reorganized Debtors); (iii) alters the Insurers' rights and obligations under the Insurance Policies and Related Agreements or modifies the coverage provided thereunder; (iv) alters the rights and obligations of the Debtors (or after the Effective Date, the Reorganized Debtors) under the Insurance Policies and Related Agreements, including, without limitation, any duty of the Debtors' to defend, at their own expense, against claims asserted under the Insurance Policies; (v) discharges, releases or relieves the Debtors (or on or after the Effective Date, the Reorganized Debtors) from any debt or other liability to the Insurers under the Insurance Policies and Related Agreements; (vi) limits, diminishes, or otherwise alters or impairs the rights of the Insurers with respect to the Insurance Security; or (vii) limits, diminishes, or otherwise alters or impairs the Debtors', Reorganized Debtors' and/or the Insurers' defenses, claims, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Insurance Policies and Related Agreements.

~~In no event may a~~To the extent provided by applicable law, the holder of a Claim may not proceed against or recover from any Insurer on any Claim that has been ~~either (a) released by this Plan or (b)~~ Disallowed. ~~However, if~~If a Claim has not been ~~released or~~ Disallowed, even though the Claim has been discharged, ~~then~~ or released, to the extent the Claim is a Potentially Insured Claim, the holder of such Potentially Insured Claim shall be entitled~~, solely to the extent allowed under applicable non-bankruptcy law,~~ to commence and/or maintain an action~~, in what forum in the first instance, in the Bankruptcy Court against the Insurer or Insurers who issued such Insurance Policy or Insurance Policies and, for nominal purposes only, against such Debtor(s); provided, however, that any award granted in any such action shall be enforceable or recoverable only from the then remaining applicable limits of any applicable Insurance Policy in an amount equal to (a) the lesser of (i) the amount of the award and (ii) the then remaining applicable limits of any applicable Insurance Policy, minus (b) the amount of any deductible, self insured retention or similar contractual undertaking contained or incorporated in such Insurance Policy or Insurance Policies. As to all Claims, including all Potentially Insured Claims, the Bankruptcy Court shall determine, in the first instance pursuant to applicable bankruptcy law, in what forum such Claim shall be determined. Moreover, none of the Insurers shall advance or pay to any third party alleging a Potentially Insured Claim any amount representing or corresponding to any deductible, self insured retention or similar contractual undertaking, and the Insurers shall be required to pay, at most, to any third party alleging a Potentially Insured Claim, only those amounts that are in excess of any applicable deductible, self insured retention or similar contractual undertaking. The Insurance Company shall not draw on any Insurance Security to pay any Claim or obligation that is released under this Plan, released by operation of law,~~

Disallowed, or discharged; provided, however, that to the extent that (a) the Debtors or Reorganized Debtors have an obligation to pay or reimburse defense costs up to the amount of a deductible or self insured retention under any applicable Insurance Policy and (b) such defense costs are properly secured by Insurance Security, then notwithstanding the entry of the Confirmation Order (and without waiving any rights to argue that neither (a) nor (b) is true and correct), the Reorganized Debtors shall have the right, but not the obligation, to reimburse the Insurance Company for such defense costs up to the amount of any applicable deductible or self insured retention; and provided further that if the Debtors or Reorganized Debtors have an obligation to pay or reimburse defense costs up to the amount of a deductible or self insured retention under any applicable Insurance Policy and such defense costs are properly secured by Insurance Security, but Debtors or Reorganized Debtors fail to make any such payment or reimbursement, the Insurance Company shall be entitled to access the Insurance Security in order to obtain the payment or reimbursement. against the Debtors and recover amounts solely to the extent of available proceeds of any applicable Insurance Policy and Related Agreements. The release or discharge of the Debtor under the Plan of a Potentially Insured Claim does not release an Insurer of any obligations under an applicable Insurance Policy and Related Agreements on account of that Potentially Insured Claim and does not release the Debtors of any obligations to such Insurer under the Applicable Insurance Policy and Related Agreements. However, to the extent that the holder of a Potentially Insured Claim has received a distribution under the Plan on a Potentially Insured Claim, then the amount of distribution on account of the Allowed Claim will be credited towards any ultimate recovery by the holder of the Potentially Insured Claim.

The Insurance Security shall be continued in full force and effect after the Effective Date and the Insurance Company is authorized, subject to the terms of the Insurance Security, the Insurance Company's Insurance-Related Contracts, and this Plan, and without seeking further order of the Court to use the applicable Insurance Security it holds to satisfy the Insurance Company's Claims to the extent permitted by the terms of the applicable agreements and the Plan, up to the amount of the Insurance Security (as it may hereinafter be modified by agreement of the parties thereto); it being understood that (a) unless Debtors agree, the Insurance Security shall not be increased or replenished in respect of any Potentially Insured Claims or on account of the payment of any deductible, self-insured retention or similar contractual undertaking related to any Potentially Insured Claim and (b) the Debtors shall have the right, but not the obligation, to increase or replenish the Insurance Security in respect of any claims asserted post-petition that are not Potentially Insured Claims but are covered or potentially covered by a pre-petition Insurance Policy issued by the Insurance Company and related contracts (nothing in this clause (b) affecting the Insurance Company's rights under its Insurance Policies or the Insurance Company's Insurance-Related Contract in respect of which the Insurance Security has been posted to disclaim coverage or contend the Debtors or Reorganized Debtors have failed to comply with such Insurance Policy or the Insurance Company's Insurance-Related Contract in respect of which the Insurance Security has been posted by not increasing or replenishing the Insurance Security in respect of such claims).

Nothing in thisthe Disclosure Statement, Plan or the Confirmation Order shall affect or impair the right of any Insurer who pays a Potentially Insured Claim, or who is the subject of an action by the holder of a Potentially Insured Claim brought pursuant to the preceding paragraph, to seek contribution or indemnification from another Insurer who issued one or more Insurance Policies and Related Agreements. The Reorganized Debtors shall complycooperate with all

reasonable requests ~~(not requiring a significant expenditure of funds)~~ by an Insurer for information relating to other Insurers or Insurance Policies <u>and Related Agreements</u> that do or may provide coverage for a particular Potentially Insured Claim to the extent such information is available.

<u>Notwithstanding and not subject to anything in the Disclosure Statement, Plan (including, but not limited to, any provision that purports to be preemptory or supervening or grants an injunction or release), Confirmation Order, or other order of this court to the contrary, the Claims of the ACE Companies shall be Allowed Administrative Expense Claims and may be paid by the Debtors (or after the Effective Date, whether now existing or hereafter arising, the Reorganized Debtors) in the ordinary course in accordance with that certain Order (I) Authorizing Assumption of Insurance Program, (II) Authorizing the Debtors to Enter into ACE Postpetition Insurance Program, and (III) Granting Related Relief entered by the Bankruptcy Court on December 7, 2009 including, but not limited to, that the ACE Companies shall not be required to file a motion or application for allowance and payment of its Administrative Expense Claim and any bar date shall not apply to the ACE Companies.</u>

## 11.4    Section 1146 Exemption.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax.  Unless expressly provided otherwise, all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including without limitation, the sales, if any, by the Debtors of owned property or assets pursuant to Section 363(b) of the Bankruptcy Code and the assumptions, assignments and sales, if any, by the Debtors of unexpired leases of non-residential real property pursuant to Section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with this Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax law.

<u>By way of example only, and not in any circumstance as a statement of limitation, the foregoing exemption pursuant to Section 1146(a) of the Bankruptcy Code is asserted with specific reference to the transactions contemplated pursuant to the Cylinders Sale Motion, as same is more fully described in Section 4.13.3 of this Plan.</u>

## 11.5    Compliance with Tax Requirements.

In connection with the implementation and consummation of this Plan, the Debtors will comply with all withholding and reporting requirements imposed by any taxing authority, and all distributions thereunder will be subject to such withholding and reporting requirements.

**11.6 Severability of Plan Provisions.**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

**11.7 Exemption from Securities Laws.**

The issuance of New Equity and any other securities that may be deemed to be issued pursuant to this Plan including, without limitation, the Investor PIK Notes, shall be exempt from state and federal securities laws pursuant to Section 1145 of the Bankruptcy Code.

**11.8 Allocation of Plan Distributions Between Principal and Interest.**

To the extent that any Allowed Claims entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated, for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE XII. RETENTION OF JURISDICTION

**12.1 Post Effective-Date Jurisdiction**

On and after the Effective Date, the Bankruptcy Court will retain and have jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Debtors' Reorganization Cases, or that relate to any of the following:

(a) To hear and determine all matters with respect to the assumption or rejection of executory contracts, resolution of disputes pertaining to Cure Payment amounts and the allowance of the Claims resulting therefrom.

(b) To hear and determine any application to modify this Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(c) To hear and determine any application under Sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by professionals prior to the Effective Date,

CH\131177.18

provided, however, that from and after the Effective Date, the payment of fees and expenses incurred from and after the Effective Date of the retained professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

(d)     To hear and determine any dispute or reconcile any inconsistency arising in connection with this Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of this Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

(e)     To hear and determine any matter concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

(f)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code.

(g)     To hear and determine any rights, claims or causes of action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code.

(h)     To hear and determine any dispute arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar claims pursuant to Section 105(a) of the Bankruptcy Code.

(i)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court.

(j)     To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation.

(k)     To take any action to ensure that all distributions are accomplished as provided herein.

(l)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, Administrative Expense Claim or Equity Interest.

(m)     To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

(n)     To take any action to recover all assets of the Debtors and property of the Debtors' estates wherever located.

(o)     To enter a final decree closing the Debtors' Reorganization Cases.

(p)    To hear and determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

(q)    To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Debtors' Reorganization Cases with respect to any Person.

(r)    To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

(s)    To hear and determine any other matter that may arise in connection with or is related to this Plan, the Disclosure Statement, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement.

## 12.2    Jurisdiction Prior to the Effective Date

Prior to the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters over which it may exercise jurisdiction pursuant to 28 U.S.C. §1334.

# ARTICLE XIII. MISCELLANEOUS PROVISIONS

## 13.1    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

## 13.2    Payment of Statutory Fees

On the Effective Date, and thereafter as may be required, the Reorganized Debtors shall pay all fees required to be paid pursuant to Section 1930 of title 28 of the United States Code.

## 13.3    Retiree Benefits

On and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors for the duration of the period for which the Debtors have obligated themselves to provide such benefits.

## 13.4    Professional Fee Claims

All final requests for Professional Fee Claims must be filed with the Court not later than forty-five (45) days after the Effective Date. Objections to the applications of such professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Debtors and their counsel and the requesting professional or other entity not later than two (2) weeks prior to the hearing date of the applications. The hearing date on any Professional Fee Claims will be set to allow a reasonable time for objections to be filed.

### 13.5   Modifications and Amendments

Subject to the prior written consent of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders, this Plan may be amended, modified or supplemented by the Debtors or Reorganized Debtors in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under this Plan, the Debtors may institute proceedings in the Bankruptcy Court, to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, provided, however, any material amendment or modification will require the consent of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders.

### 13.6   Corrective Action

Prior to the Effective Date, upon the prior written consent of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders, the Debtors may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims and Equity Interests.

### 13.7   Plan Revocation, Withdrawal or Non-Consummation

Subject to the prior written consent of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders, the Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan and no acts taken in preparation for consummation of this Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interest in, any Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by the Debtors or any other Person.  None of the filing of this Plan, the taking by the Debtors of any action with respect to this Plan or any statement or provision contained in this Plan or herein will be or be deemed to be an admission by any of the Debtors, the holders of any Claims or any other Person against interest, or be deemed to be a waiver of any rights, claims or remedies that the Debtors may have, and until the Effective Date all such rights and remedies are and will be specifically

reserved. In the event this Plan is not confirmed and the Confirmation Order is not entered, this Plan and this Plan Documents, and any statement contained herein or therein, may not be used by any Person, party or entity against any the Debtors.

**13.8    Modification of Exhibits**

Subject to obtaining the consents of (i) the Requisite Supporting Revolving Lenders, (ii) the Requisite Supporting Term Lenders and (iii) to the extent required in the Restructuring Support Agreement, the Requisite Supporting Noteholders, the Debtors explicitly reserve the right to modify or make additions to or subtractions from any schedule to this Plan or the Disclosure Statement and to modify any exhibit to this Plan or the Disclosure Statement prior to the Objection Deadline.

**13.9    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit or Plan Document provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**13.10    Time**

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply. With regard to all dates and periods of time set forth or referred to in this Plan, time is of the essence.

**13.11    Section Headings**

The section headings and other captions contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

**13.12    Effectuating Documents and Further Transactions**

Each of the officers of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary, appropriate or desirable to effectuate and further evidence the terms and provisions of this Plan, the Plan Documents and any securities issued pursuant to this Plan.

**13.13    Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person; provided, however, that nothing in this Plan or the Confirmation Order shall be deemed to permit the assignment of an Insurance Policy that is non-assignable to any party other than the Reorganized Debtors without the Insurer's consent under applicable non-bankruptcy law.

**13.14  Notices**

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

- Taylor-Wharton International LLC
  4718 Old Gettysburg Road
  Mechanisburg, PA 17055
  Attention:  Chief Financial Officer
- Telephone:
- Facsimile:
- Email:
- 

and copies to counsel for the Debtors and the Reorganized Debtors:

- Reed Smith LLP
- 599 Lexington Avenue
- 22nd Floor
- New York, NY  10022
- Attn:  J. Andrew Rahl, Jr.
- Tel: (212) 521 5400
- Fax: (212) 521 5450
- Email: arahl@reedsmith.com

  -and-

- Reed Smith LLP
- 1201 Market Street
- Suite 1500
- Wilmington, DE  19801
- Attn:  Mark W. Eckard
- Tel: (302) 778 7512
- Fax: (302) 778 7575
- Email: meckard@reedsmith.com


Any delivery after 5:00 p.m., prevailing Central time, on a Business Day, or on a day that is not a Business Day, shall be deemed to have been made on the immediately following Business Day.


Dated: ~~December 4, 2009~~May 7, 2010

54 - 54 -

Respectfully submitted,

TAYLOR-WHARTON INTERNATIONAL LLC,
as agent and attorney-in fact for each of the Debtors
listed on Exhibit 1

By: /s/ Bill Corbin
Name: Bill Corbin
Title: Chief Executive Officer

COUNSEL:

REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
Tel: (302) 778 7512
Fax: (302) 778 7575

-and-

REED SMITH LLP
599 Lexington Avenue
22nd Floor
New York, NY 10022
Tel: (212) 521 5400
Fax: (212) 521 5450

As to legal matters contained within this Plan:

/s/ Mark W. Eckard
Mark W. Eckard, ~~proposed~~ counsel for the Debtors and
Debtors-in-Possession

As to legal matters contained within this Plan:

/s/ J. Andrew Rahl, Jr.
J. Andrew Rahl, Jr., ~~proposed~~ counsel for the Debtors and
Debtors-in-Possession

## Exhibit 1

### Debtors

1.  Taylor-Wharton International LLC

2.  Alpha One Inc.

3.  Beta Two Inc.

4.  Gamma Three Inc.

5.  Delta Four Inc.

6.  Epsilon Five Inc.

7.  Taylor-Wharton Intermediate Holdings

8.  TWI-Holding LLC

9.  TW Cryogenics LLC

10. TW Cylinders LLC

11. Sherwood Valve LLC

12. American Welding & Tank LLC

13. TW Express LLC

**Note:** Exhibits 2-8 and 10-12 to this Plan are voluminous. They were filed with the Court on November 19, 2009 and are available as part of D.I. 24. They are hereby incorporated by reference.

## Exhibit 2

### Restructured Credit Agreement

## Exhibit 3

### Investor PIK Documents

## Exhibit 4

### Amended Bylaws

## Exhibit 5

### Amended Certificate of Incorporation

## Exhibit 6

### Intercreditor Agreement

## Exhibit 7

### Operating Agreement

## Exhibit 8

### Note Purchase Agreement

## Exhibit 9

### Rejected Executory Contracts and Unexpired Leases

[to come]

**Exhibit 10**

**Restructuring Support Agreement**

**Exhibit 11**

**Exit Credit Documents**

**Exhibit 12**

**DIP Facility**

Document comparison by Workshare Professional on Friday, May 07, 2010 7:23:28 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DIGITALFILE/US_ACTIVE/102777259/1 |
| Description | #102777259v1<US_ACTIVE> - 12-4 TWI Plan |
| Document 2 ID | interwovenSite://DIGITALFILE/US_ACTIVE/102777259/4 |
| Description | #102777259v4<US_ACTIVE> - First Amended Joint Plan of Reorganization |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| ~~Moved deletion~~ |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | Count |
|---|---|
| Insertions | 195 |
| Deletions | 152 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 353 |