## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TAYLOR-WHARTON | ) | Case No. 09-14089 (BLS) |
| INTERNATIONAL, LLC, *et al.*[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

## ORDER (A) APPROVING THE SALE OF THE DEBTORS' CYLINDERS BUSINESS AND RELATED PURCHASED PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF

This matter having come before the Court on the *Motion Pursuant To 11 U.S.C. §§ 105(A), 363, 365 And Fed. R. Bankr. P. 2002, 6004, 6006 For (I) Entry Of An Order (A) Establishing Bidding And Auction Procedures Related To The Sale Of The Debtors' Cylinders Business And Related Acquired Assets; (B) Approving Bid Protections; (C) Scheduling An Auction And Sale Hearing For The Sale Of The Debtors' Acquired Assets; (D) Establishing Certain Notice Procedures For Determining Cure Amounts; (E) Approving Form And Manner Of Notice Of All Procedures, Protections, Schedules And Agreements; And (F) Granting Certain Related Relief; And (II) Entry Of An Order (A) Approving The Sale Of The Debtors' Cylinders Business And Related Acquired Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; And (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (the "Sale Motion") dated April 30, 2010,[2] filed by the above-

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Taylor-Wharton International LLC (1577); TWI-Holding LLC (8154); Taylor-Wharton Intermediate Holdings LLC (6890); Alpha One Inc. (1392); Beta Two Inc. (1408); Gamma Three Inc. (1367); Delta Four Inc. (1320); Epsilon Five Inc. (1344); TW Cryogenics LLC (1713); TW Cylinders LLC (1665); Sherwood Valve LLC (1781); American Welding & Tank LLC (1945); and TW Express LLC (6414). Each of the Debtors has a principal place of business at 4817 Old Gettysburg Road, Mechanicsburg, Pennsylvania 170559.

[2]  Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Sale Motion.

captioned debtors and debtors in possession (collectively, the "Debtors"), seeking, among other things, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, as amended (the "Bankruptcy Rules"), the entry of an order (the "Sale Approval Order"): (i) authorizing and approving the stalking horse Asset Purchase Agreement, dated as of April 30, 2010 (including all exhibits, schedules and ancillary agreements related thereto, the "Agreement"), by and among Taylor-Wharton International LLC ("Taylor-Wharton"), TW Cylinders LLC ("TW Cylinders" and together with Taylor-Wharton, collectively, "Sellers") and Norris Cylinder Corporation ("Purchaser"), pursuant to which Sellers have agreed to sell its business relating to the manufacture and sale of small, high pressure and acetylene cylinders and related assets including the Sold Contracts (as defined below) (collectively, the "Assets") to the Purchaser (collectively, the "Sale Transaction"); (ii) authorizing and approving the sale by the Debtors of the Assets, free and clear of all liens, claims, encumbrances and interests (other than certain liabilities that will be assumed by the Purchaser, as set forth in Section 2.3 of the Agreement (the "Assumed Liabilities")); (iii) authorizing the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases of the Debtors in connection with the Sale Transaction (collectively, the "Debtor Contracts") identified on Schedule 21(c) of the Agreement ; and (iv) granting other related relief; the Court having conducted a hearing on the Sale Motion on June 7, 2010 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; the Court having reviewed and considered (i) the Sale Motion and the exhibits thereto, (ii) the Agreement, (iii) this Court's prior Order Approving Motion Pursuant To 11 U.S.C. §§ 105(A), 363, 365 And Fed. R. Bankr. P. 2002, 6004, 6006 For Entry Of An Order (A) Establishing Bidding And Auction Procedures Related To The Sale Of The Debtors' Cylinders Business And Related Acquired Assets; (B) Approving Bid Protections; (C) Scheduling An Auction And Sale Hearing For The Sale Of The Debtors' Acquired Assets; (D) Establishing Certain Notice

Procedures For Determining Cure Amounts; (E) Approving Form And Manner Of Notice Of All Procedures, Protections, Schedules And Agreements; And (F) Granting Certain Related Relief; (Docket No. 330), dated May 12, 2010 (the "<u>Bidding Procedures Order</u>") approving competitive bidding procedures for the Assets (the "<u>Bidding Procedures</u>"), (iv) all objections to the Sale Transaction, and (v) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motion and the Bidding Procedures Order has been provided in accordance with the Bidding Procedures Order and that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and these cases; and after due deliberation thereon; and good cause appearing therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

<u>JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES</u>

A.    This Court has jurisdiction over the Sale Motion, the transactions contemplated by the Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Approval Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Approval Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief sought in the Sale Motion are Sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

## SOUND BUSINESS PURPOSE

D.    The Debtors seek to convey the Assets, all of which are related to the Sellers' business of designing, manufacturing and selling small, high pressure and acetylene cylinders (the "Business").

E.    The Debtors have demonstrated, and the Agreement reflects, both (1) good, sufficient, and sound business purposes and justifications for the Sale Transaction, and (2) compelling circumstances for the Sale Transaction outside of the ordinary course of the Debtors' business pursuant to Section 363(b) of the Bankruptcy Code. Time is of the essence in consummating the proposed Sale Transaction.

F.    The Sale Transaction is being made in accordance with and under Debtors' plan of reorganization.

G.    The Agreement was not entered into, and none of the Debtors or the Purchaser have entered into the Agreement or propose to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding the Debtors' creditors. None of the Debtors or the Purchaser has entered into the Agreement or propose to consummate the Sale Transaction fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

## HIGHEST AND BEST OFFERS

H.    The Debtors actively marketed the sale of substantially all of their assets before the Petition Date and engaged in discussions with a variety of financial advisors and consultants in an effort to maximize the value of the Assets. The Debtors and their advisors undertook exhaustive efforts to solicit interest from third parties with the potential to acquire all or a substantial portion of the Assets.

4

I.  On May 12, 2010, this Court entered the Bidding Procedures Order approving Bidding Procedures for the Assets. The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Assets. No Qualified Bids were submitted by the Bid Deadline and therefore, the Debtors did not conduct an Auction in accordance with the Bidding Procedures Order. The Debtors complied with the Bidding Procedures Order in all respects. The Purchaser complied with the Bidding Procedures Order.

J.  As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, (1) the Debtors have adequately marketed the Assets; (2) the purchase price contained in the Agreement constitutes the highest and otherwise best offer for the Assets and provides fair and reasonable consideration for the Assets; (3) the Sale Transaction will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; (4) no other party has offered to purchase the Assets for greater economic value to the Debtors or their estates; and (5) the Agreement and the consideration to be paid by the Purchaser under the Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia. The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

## BEST INTEREST OF CREDITORS

K.  Approval of the Agreement and the consummation of the Sale Transaction to the Purchaser at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

## GOOD FAITH

L.     The Purchaser is not an "insider" of any of the Debtors, as that term is defined by Section 101(31) of the Bankruptcy Code.

M.     The Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Sellers and the Purchaser in good faith, without collusion and from arm's-length bargaining positions.  The Purchaser has proceeded in good faith in all respects in connection with this proceeding, is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  Neither the Sellers nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided; that would tend to hinder or delay creditors; or impose costs and damages under Section 363(n) of the Bankruptcy Code.

## NOTICE OF THE SALE MOTION, THE AUCTION AND THE CURE AMOUNTS

N.     As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate and sufficient notice of the Sale Motion and the Sale Hearing has been provided by the Debtors, (2) such notice was good, sufficient and appropriate under the particular circumstances and (3) no other or further notice of the Sale Motion, the proposed Sale Transaction, the Bidding Procedures, the Auction or the Sale Hearing is or will be required.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:

1.     counsel to Purchaser;

2.     counsel to the Debtors' postpetition lenders;

3.     counsel to the Debtors' prepetition lenders;

4.     any party who, in the past year, expressed in writing to the Debtors an interest in the Assets or the Debtors' other assets;

5.     nondebtor parties to the Debtor Contracts;

6.      all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Assets or the Debtors' other assets;

7.      the Internal Revenue Service;

8.      the Department of Treasury for each of the states identified on Schedule 5.3 of the Agreement;

9.      the Environmental Protection Agency;

10.     the Department of Environmental Protection for the State of Alabama;

11.     all persons or entities that have requested notice in these Chapter 11 cases under Bankruptcy Rule 2002; and

12.     the United States Trustee.

O.      The Debtors have served notice of their intent to assume and assign the Debtor Contracts and of the related proposed cure costs upon each nondebtor counterparty to the Debtor Contracts. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the cure costs for the Debtor Contracts and the assumption and assignment of the Debtor Contracts. All nondebtor parties to the Debtor Contracts have been given until the end of June 7, 2010 to object to both the cure costs and the assumption and assignment of the Debtor Contracts (including objections related to adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty to each Debtor Contract from accepting performance by, or rendering performance to, the Purchaser for purposes of Section 365(c)(1) of the Bankruptcy Code). Such opportunity for objection to assumption and assignment of Debtors Contracts is sufficient and appropriate.

## SECTION 363(F) REQUIREMENTS MET FOR FREE AND CLEAR SALES

P.      The Debtors may sell the Assets free and clear of all liens, claims, interests (as used in Section 363(f) of the Bankruptcy Code) and encumbrances of any kind or nature whatsoever ("Claims") (except for any Assumed Liabilities), because, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code have been

7

satisfied. The assumption and assignment of each of the Debtor Contracts is also free and clear of all Claims other than the payment of Cure Costs. Those holders of Claims who did not object, or who withdrew their objections, to the Sale Transaction or the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale Transaction, subject to any defenses of the Debtors.

Q.      The Debtors are the sole and lawful owners of the Assets and no other person has any ownership right, title or interest therein.

R.      All holders of Claims are adequately protected, and the Sale Transaction thus satisfies Section 363(e) of the Bankruptcy Code, by having their Claims, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such Claim holder had prior to the Sale Transaction, subject to any rights, claims and defenses of the Debtors and their estates.

S.      The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Assets were not free and clear of all Claims other than Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any such Claims, including, without limitation and as applicable, certain liabilities (collectively, the "Excluded Liabilities") related to the Debtors' businesses that will not be assumed by the Purchaser, as set forth in Section 2.3 of the Agreement.

T.      Except for the Assumed Liabilities, the Sale Transaction will not impose or result in the imposition of any liability or responsibility of the Purchaser or its affiliates, successors or assigns or any of their assets (including the Assets) and the transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or any of their assets (including the Assets) to any liability for any Claims including, without limitation, successor liability (including, but not limited to, any successor liability relating to taxes or successor liability under the group health plan continuation coverage requirements of Part 6 of Subtitle B of Title I of the Employee Retirement Income Security Act of 1974, as amended, and Section 4980B of the Internal Revenue Code of 1986, as amended, and any similar requirement under state law (collectively "COBRA") or any products liability.

## ASSUMPTION AND ASSIGNMENT OF THE DEBTOR CONTRACTS

U.      The assumption and assignment of the Debtor Contracts are integral to the Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

V.      Except as may be found by the Court after consideration of any objections, filed on or before June 7, 2010, to assumption and assignment of Debtor Contracts, with respect to each of the Debtor Contracts:  (i) the Debtors have met all requirements of Section 365(b) of the Bankruptcy Code; (ii) the Purchaser has provided all necessary adequate assurance of future performance under the Debtor Contracts in satisfaction of Sections 365(b) and 365(f) of the Bankruptcy Code; and (iii) the Debtor Contracts can be assumed by the Debtors and assigned to the Purchaser, as provided for in the Bidding Procedures Order, the Sale Motion and the Agreement.

W.      Oracle USA, Inc. ("Oracle") consents to Purchaser's use for 90 days after closing, in accordance with the Transition Services Agreement attached as Exhibit A to the Agreement, of the J.D. Edwards Systems that is licensed by Oracle to Debtors.  Purchaser

acknowledges that its use of the J.D. Edwards Systems is subject to the terms of the Oracle License and Services Agreement and the Assignment of Certificate of Non Possession (together the "OLSA"), each dated February 1, 2008 by and between Taylor-Wharton International, LLC and Oracle, and Purchaser further acknowledges that after such 90 day period, Purchaser must obtain Oracle's consent or a license to continue to use the J.D. Edwards Systems; notwithstanding the foregoing, Purchaser assumes no liabilities under the OLSA except as set forth in the Transition Services Agreement. The OLSA is not a Debtor Contract, Debtor is not seeking to assign to Purchaser the OLSA and Oracle does not consent to any such assignment.

## VALIDITY OF THE TRANSFER

X.     As of the closing of the Sale Transaction (the "Closing"), the transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of (1) all Claims other than Assumed Liabilities and (2) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtors, claims (as defined in Section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including, but not limited to, any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise.

Y.     The Debtors (1) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors, (2) have all of the

corporate power and authority necessary to consummate the transactions contemplated by the Agreement, (3) have taken all actions necessary to authorize and approve the Agreement and the consummation by the Debtors of the transactions contemplated thereby and (4) no consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate such transactions.

### NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

#### GENERAL PROVISIONS

1.      The Sale Motion is granted in full and the Sale Transaction is approved as set forth in this Sale Approval Order.

2.      The findings of fact set forth above and conclusions of law stated herein will constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later will be determined to be a conclusion of law, it will be so deemed, and to the extent any conclusion of law later will be determined to be a finding of fact, it will be so deemed.

3.      All objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein.

#### APPROVAL OF THE AGREEMENT

4.      The Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

5.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the

Agreement and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Agreement and this Sale Approval Order.

6.      The Debtors, as well as their affiliates, officers, employees and agents, are authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, in substantially the same form as the Agreement attached to the Sale Motion, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may be (a) reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Assets, (b) necessary or appropriate to the performance of the obligations contemplated by the Agreement, and (c) as may be reasonably requested by the Purchaser to implement the Agreement and consummate the Sale Transaction in accordance with the terms thereof, all without further order of the Court.

7.      This Sale Approval Order and the Agreement will be binding in all respects upon the Purchaser, the Debtors the reorganized debtors, and their affiliates, any trustees appointed in the Debtors' bankruptcy cases (whether under Chapter 7 or Chapter 11 of the Bankruptcy Code), all creditors (both known and unknown) of any of the Debtors, all interested parties and their successors and assigns including, but not limited to, any person or entity asserting a Claim and any non-debtor counterparty to one of the Debtor Contracts.

8.      Nothing contained in any Chapter 11 plan confirmed in these Chapter 11 cases, or any order confirming any such Chapter 11 plan will conflict with or derogate from the provisions of the Agreement and this Sale Approval Order, and to the extent of any conflict or derogation between the Agreement and this Sale Approval Order and any such future plans or orders, the terms of the Agreement and this Sale Approval Order will control.

## TRANSFER OF ASSETS

9.     Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets in accordance with the terms of the Agreement. The Assets will be transferred to the Purchaser, and upon consummation of the Agreement, such transfer will (a) be valid, legal, binding and effective; (b) vest the Purchaser with all right, title and interest of the Debtors in the Assets; and (c) be free and clear of all Claims except for Assumed Liabilities with all liens, Claims, interests and encumbrances to attach to the net proceeds of the Sale Transaction, in the order of their priority and with the same validity, force and effect which they now have against the Assets, subject to any claims and defenses the Debtors may possess with respect thereto.  Notwithstanding anything to the contrary in this Sale Approval Order, Debtors' interest in the trademark "Coyne" registered in the United States Patent and Trademark Office as registration number 1033620 and 674029 (the "Disputed Marks") will be transferred to Purchaser subject to any valid Claim of Manufacturers Hanover Trust Company, as agent.  The Debtors will provide Manufacturers Hanover Trust Company notice of this Sale Approval Order within five business days of its entry and if Manufacturers Hanover Trust Company fails to object within 21 days after service of the Sale Approval Order, Manufacturers Hanover Trust will be deemed to have consented to the Sale of the Disputed Mark free and clear of any and all Claims in accordance with 11 U.S.C. 363(f)(2) and the Disputed Marks will be free and clear of all Claims.  In the event Manufacturers Hanover Trust Company does object, this Court retains jurisdiction to resolve any dispute arising from or relating to Manufacturers Hanover Trust Company's Claim in the Disputed Marks.

10.     Except as otherwise provided in the Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, landlords, lessors, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Claims (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) except for Assumed Liabilities, arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Business prior to Closing, or the transfer of the Assets to the Purchaser, are, hereby forever barred, estopped and permanently enjoined from asserting such Claims against the Purchaser, its successors or assigns, its property or the Assets. No such persons or entities will assert against the Purchaser or their successors in interest any liability, debt, claim or obligation arising from, related to or in connection with the ownership or operation of the Assets prior to the Closing, except for Assumed Liabilities.

11.    This Sale Approval Order (a) will be effective as a determination that, as of Closing, all Claims other than Assumed Liabilities relating to the Assets have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and will be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

12.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtors or the Assets will not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Assets or otherwise, then only with regard to Assets that are purchased by the Purchaser pursuant to the Agreement and this Sale Approval Order (a) the Debtors and the Purchaser are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered or otherwise recorded, will constitute conclusive evidence of the release of all Claims against the Assets other than the Assumed Liabilities. This Sale Approval Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

13.    The Purchaser is hereby authorized to execute and deliver such other documents, statements, instruments and notices which may be necessary or desirable to fully consummate the Agreement and the Sale Transaction.

14.    The Agreement is hereby assigned to the reorganized Seller and the reorganized TW International and is a binding and enforceable contract of each such reorganized entities.

15.    All persons or entities in possession of some or all of the Assets are directed to surrender possession of such assets to the Purchaser or its designee at the time of Closing of the Sale Transaction.

16.    Following the Closing of the Sale Transaction, no holder of any lien, claim, interest or encumbrance will interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to any such lien, claim, interest or encumbrance, or based on any actions the Debtors may take in their Chapter 11 cases.

17.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Purchaser in accordance with the Agreement and this Sale Approval Order.

18.  .  To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred and conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale Transaction.

## ASSUMPTION AND ASSIGNMENT OF DEBTOR CONTRACTS

19.    Except as may be found by the Court after consideration of any objections, filed on or before June 7, 2010, to assumption and assignment of any Debtor Contracts, pursuant to Sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption and assignment to the Purchaser of the Debtor Contracts is hereby approved, and all requirements of Section 365 of the Bankruptcy Code are hereby deemed satisfied.

20.  ·  Except as may be found by the Court after consideration of any objections, filed on or before June 7, 2010, to assumption and assignment of any Debtor Contracts, the Debtors are hereby authorized in accordance with Sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Debtor Contracts to the Purchaser free and clear of all Claims, and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Debtor Contracts to the Purchaser.

21.    Except as may be found by the Court after consideration of any objections, filed on or before June 7, 2010, to assumption and assignment of any Debtor Contracts, the Debtor Contracts will be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Debtor Contract (including those of the type described in Sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such

assignment or transfer. There will be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption or assignment of the Debtor Contracts. No Debtor Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Agreement.

22.    The Purchaser will pay all cure costs relating to Debtor Contracts (as such term is defined in the Agreement). The Purchaser is authorized to pay the cure costs in accordance with the terms of this Order and the Agreement.

23.    Payment of the cure costs will be in full and final satisfaction of any and all defaults under the Debtor Contracts, whether monetary or non-monetary. Each nondebtor party to a Debtor Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Purchaser, their successors or assigns or the property of any of them, any default based on all known and unknown facts and circumstances existing as of the date of the Sale Hearing regardless of whether such default was raised or asserted prior to or at the Sale Hearing.

24.    The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Debtor Contract will not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Debtor Contracts.

25.    Upon the Closing of the Sale Transaction, except as may be found by the Court after consideration of any objections, filed on or before June 7, 2010, to assumption and assignment of any Debtor Contracts, the Purchaser will be fully and irrevocably vested with all right, title and interest of the Debtors under the Debtor Contracts.

26.    The assignments of each of the Debtor Contracts are made in good faith under Sections 363(b) and (m) of the Bankruptcy Code.

## ADDITIONAL PROVISIONS

27.    Except as expressly set forth in the Agreement, the Purchaser and its successors or assigns will have no liability for any liability, claim (as that term is defined in Section 101(5) of the Bankruptcy Code), damages or other obligation of or against the Debtors related to the Assets by reason of the transfer of the Assets to the Purchaser. The Purchaser, will not be deemed, as a result of any action taken in connection with the purchase of the Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Debtor Contracts from and after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors; or (d) have any liability whatsoever, other than the Assumed Liabilities, under any theory of, without limitation, taxes, environmental, labor and employment, products or antitrust liability, any successor liability under COBRA, whether known or unknown at the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

28.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing any action or proceeding, at law or in equity, against the Purchaser, its affiliates, successors and assigns, or the Assets, with respect to any (a) Claim other than Assumed Liabilities or (b) successor liability of the Purchaser for any of the Debtors.

29.    Effective upon the Closing, no default will exist under any of the assumed Debtor Contracts and no non-debtor counterparty to any of the assumed Debtor Contracts will be permitted to declare a default by the Purchaser or otherwise take action against the

Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any duty or obligation under any of the assumed Debtor Contracts.

30. While the Debtors' Chapter 11 cases, or any subsequent Chapter 7 cases, are pending, this Court will retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Approval Order and the Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects) and to adjudicate disputes related to this Sale Approval Order or the Agreement.

31. Nothing in this Sale Approval Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Sale Approval Order will be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Sale Approval Order or for liabilities relating to off-site disposal of wastes by the Debtors prior to entry of this Sale Approval Order.

32. No bulk sales law, or similar law of any state or other jurisdiction will apply in any way to the transactions contemplated by the Agreement, the Sale Motion and this Sale Approval Order.

33. The Sale Transaction is made in furtherance of, or in connection with, the Debtors' First Amended Joint Chapter 11 Plan of Reorganization of Taylor-Wharton International, LLC and Its Affiliated Debtors (the "Plan") and therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax law.

34.    Notwithstanding anything to the contrary herein, as provided in Paragraph 13 of the DIP Order (as defined in the Plan), the Closing of the Sale Transaction shall not occur without the prior written consent (the "DIP Secured Parties' Sale Consent") of the requisite DIP Secured Parties (as defined in the DIP Order) under the DIP Loan Documents (as defined in the DIP Order), and the Sale Transaction shall not be consummated except in accordance with the terms of such DIP Secured Parties' Sale Consent. For avoidance of doubt, and as contemplated by the DIP Order and Section 1.8(d) of the DIP Credit Agreement (as defined in the DIP Order), the Closing Purchase Price from the Sale Transaction and all other amounts payable to, or for the account of, any Debtor in respect of the Sale Transaction at anytime after the Closing shall be remitted to the DIP Agent (as defined in the DIP Order) and escrowed and/or applied in accordance with the terms of the DIP Secured Parties' Sale Consent or as otherwise specified by the DIP Agent in accordance with the provisions of Section 1.8(d) of the DIP Credit Agreement.

35.    The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction will not affect the validity of the Sale Transaction to the Purchaser, unless such authorization is duly stayed pending such appeal.

36.    The terms and provisions of the Agreement and this Sale Approval Order will be binding in all respects upon, and will inure to the benefit of, the Debtors, the reorganized debtors, their estates and their creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting claims in the Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms will likewise

be binding on such trustee (whether under Chapter 7 or Chapter 11 of the Bankruptcy Code), examiner or receiver and will not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders or any trustee, examiner or receiver.

37.     The failure specifically to include any particular provisions of the Agreement in this Sale Approval Order will not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

38.     The Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Agreement.

39.     In the event that there is a direct conflict between the terms of this Sale Approval Order and the Agreement, the terms of this Sale Approval Order will control.

40.     Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

41.     As provided by Bankruptcy Rules 6004(h) and 6006(d), this Sale Approval Order will not be stayed for 10 days after the entry of the Sale Approval Order and will be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the Sale Transaction immediately upon entry of this Sale Approval Order.

Dated:  Wilmington, Delaware
        As of: June 8, 2010
        ~~June 7, 2010~~

21